INTERNATIONAL & GREAT NORTHERN RAILWAY COMPANY ET AL.
v. G. T. TISDALE.

No. 6124.

1. **Non Est Factum—Practice.**—When a suit is founded on an instrument in writing charged to have been executed by the authority of the defendant, though it may be ambiguous in its terms and may not on its face purport to be the act of defendant, evidence showing that the instrument was not executed by defendant is not admissible in the absence of a plea of *non est factum*, verified by affidavit.

2. **Pleading.**—In a suit against a railway company where its liability for the transportation of specific articles is alleged in the petition to result from its partnership with connecting lines of railway over which the articles were to be carried no evidence of partnership is required to be shown by the plaintiff in the absence of the statutory plea of *non est factum*, denying the partnership.

3. **Common Carrier.**—An action for damages for goods damaged in transitu over connecting railways will lie against the railway company in whose custody the goods were when damaged.

4. **Labor Strikes.**—In a suit against a railway company for damages resulting from an alleged failure to transport specific articles to their destination within a reasonable time evidence by the defendant that a labor strike existed which prevented the moving of the train on which the goods were shipped is admissible.

Appeal from Williamson.    Tried below before Hon. A. S. Walker.

G. T. Tisdale, the appellee, sued the appellants upon a contract of carriage from Franklin, Kentucky, to Georgetown, Texas, to recover damages for failure to deliver a jack and for injuries sustained in transit by a stallion.    Plaintiff also sought to recover the rental value of the jack and of the stallion, and the probable earnings of each as a foal getter during the breeding season of 1886.    Suit was founded upon a special contract in writing, annexed to and made a part of plaintiff's petition, which upon its face purported to be the act and deed of the Louisville & Nashville Railroad Company and its connecting lines of the first part, etc., executed by one F. S. Jenkins, of Franklin, Kentucky, as its agent.

Plaintiff alleged that Jenkins was the agent of the defendants as well as of the Louisville & Nashville Railroad Company; that the defendants were connecting carriers in the line from Franklin to Georgetown, and that an arrangement existed between all the carriers in said line whereby through contracts of shipment could be made and by which each carrier along the line of route acted as the agent of the other carriers.

Defendants interposed to the petition a general demurrer and special exceptions, a general denial, and a special answer, setting up and relying upon certain exceptions contained in the contract, alleging that the damages complained of fell within the exceptions, which were reasonable and just, and in particular that such damages resulted from delay incident to a strike along and over certain lines over which the stock had to be carried before it could reach the lines of the defendants and be conveyed to Georgetown, the place of destination.    It was further averred that said strike originated upon a line not subject to the management or control of the defendants or either of them, and that defendants during the continuance of the strike did not and could not move any stock or freight trains.

The contract sued on was made a part of the petition, and consisted of a receipt by the Louisville & Nashville Railroad Company for 1 horse, 2000 pounds; 1 Jack, 3000; car No. L. & N. 1972; tariff rate per 100 from Franklin, Ky., to Georgetown, Texas, $2.96; and an agreement, dated Franklin, Kentucky, March 5, 1886, between the Louisville & Nashville Railroad Company and its connecting lines as common carriers and the plaintiff.    By the terms of this shipping contract the former agreed to transport said horse and jack, car load of two head, from Franklin, Kentucky, to Georgetown, Texas, at the rate of $1.48 per 100

pounds, and a free passage to the owner if shipped in car load quantities, relieving the carrier, the Louisville & Nashville Railroad Company, from liability when the same were delivered at Memphis. Among other limitations of the carrier's liability it stipulated that the shipper assumed all risk of damage, injury, or loss sustained from delay or detention in transportation occasioned by mob, strike, or threatened violence, etc., or any other cause than the negligence of the carrier. It required the shipper to feed and water the stock at his own risk; that he should see that the stock was securely placed in the cars furnished and that the cars were securely and properly fastened; that if any damage should occur for which the carrier was liable the value at the place and date of shipment should govern, and that the amount should not exceed for a stallion or jack $200.

The proof was the receipt and shipping contract, dated March 5, 1886, executed by the Louisville & Nashville Railroad for itself and connecting lines by F. S. Jenkins as agent at Franklin, Kentucky, already mentioned. The plaintiff G. S. Tisdale delivered the stallion and jack in good condition to the carrier at Franklin, Kentucky. He desired to accompany and care for the stock, but the company refused to allow him to do so unless he paid passenger rates. They furnished him with the car designated "L. & N. No. 1972," which at his own expense he carefully prepared in such a manner, by placing stalls, platforms, racks, etc., therein, as would prevent injury to the stock in transit, and supplied food and buckets for watering the animals. The stock reached Little Rock about March 8, 1886, where it was placed in ill prepared stock yards and watered with impure and unwholesome water. The jack reached that point in a bad condition. The stallion and jack were put in a stable, and on March 25th the jack died. On April 2, 1886, the stallion was started for Georgetown, which place it reached on April 7, 1886, on the defendant's road.

The stallion arrived at the destination in a different car from that prepared for the stock at Franklin. There were no arrangements or appliances in the car to prevent injury to him in transporting him over the road. He was loose in the car and badly bruised, scratched, and injured; stiff in the joints and partially foundered. He left Little Rock in good condition. Under ordinary movements of the train the stock should have reached Georgetown by the 15th of March, 1886. For the three weeks (from March 15th to delivery) the value of the stallion was $100. Defendants exacted payment of $96.40 as freight before delivery of the horse. The contract price was $74. Estimating the weight by the contract, 3000 pounds for jack and 2000 for the horse, and allowing freight only for the horse (jack not being delivered no freight was earned), $29.60, two-fifths of $74, makes the overcharge $66.80. The value of the jack at place of shipment was $300, that of the horse $200; the value of

each at Georgetown was $500. In the condition the stallion was delivered he was injured to the extent of one-half his value.

The defendants offered to introduce evidence to the effect that when the live stock described in the petition reached Little Rock en route for Georgetown, Texas, the Saint Louis & Iron Mountain Railroad Company, over which it had to pass before reaching defendants' road, had, in view of a strike pending on certain lines of road in Texas, issued a general order prohibiting its agents from receiving for transportation to points in Texas live stock, and that the said Saint Louis & Iron Mountain Railroad, when said stock was tendered to it, refused to receive the same; and also to prove that a strike was, from about the 7th of March, 1886, to 2d of April, 1886, pending over the line of said railroad, during the existence of which because of the interference of said strikers no live stock or freight trains could be run over said line, and which road was not under defendants' control; and also to prove that no partnership existed between said road and defendants', and there was no running arrangement existing between them—that said railroad was managed independently of defendants.

Upon objection this evidence was excluded and defendant excepted.

On the cross-examination of plaintiff defendants proposed to inquire whether he knew or was prepared to show that Jenkins in executing the contract was acting as agent for defendants or any other carrier than the Louisville & Nashville Railroad Company, and whether any running or other arrangements as to through freights existed at that time by which defendants could be bound by said contract; which was objected to by plaintiff's counsel, and the objection sustained upon the ground that there was no plea verified by affidavit denying said agency or partnership, to which defendants excepted.

The conclusions of law found by the court from the foregoing facts are as follows:

"1. The contract bound the defendants, execution thereof being alleged and not denied under oath in answer.

"2. The refusal by defendants to plaintiff to allow him to accompany the stock to care for them relieved plaintiff from his stipulated care for them, and the defendant railroad companies privy to said contract became bound to care for said stock.

"3. The handling of the stock en route was not such as plaintiff was entitled to have had towards said animals, and from said neglect to properly care for them—that is for negligence—the jack died and the horse was delayed and was injured.

"4. For such injury plaintiff is entitled to have damages: (1) Stipulated (value in contract) of jack, $200; (2) half value of horse (limited in contract), $100; (3) use for three weeks, $100; (4) overcharge exacted, $66.80. $466.80."

And judgment for $466.80 was rendered in favor of the plaintiff, with costs of suit.

*Maxey & Fisher*, for appellants. — 1.   The court erred in refusing to permit defendants on the cross-examination of plaintiff to inquire whether Jenkins, who signed as agent the special contract on which the stallion and jack were shipped from Franklin, Kentucky, was the agent of these defentants or either of them, and whether any running or other arrangement as to through shipments existed at the time of the execution of the contract by which said defendants or either of them could be bound to carry out the terms and conditions thereof.

2.   Notwithstanding the adverse intimation in City Water Company v. White, and in Taylor v. Bradford, 61 Texas, it is submitted that clause 8 of article 1265, Revised Statutes, applies only to those instruments which purport to be the act of the party sought to be charged or the act of some one purporting to act for him; and that where a pleading is founded upon an instrument which upon its face does not purport to be the act of the party sought to be charged or of some one acting for him by his authority, such party may under an unsworn plea deny the alleged facts and adduce evidence in support of such denial.

3.   The court erred in refusing to permit the defendants to prove by the depositions of D. S. H. Smith, C. H. Warner, S. D. Barlow, B. S. Johnson, George E. Dodge, and others that from about March 7 or 9, 1886, when said live stock reached Little Rock, Arkansas, until about April 2 or 3, 1886, a strike was pending along and over the lines of the St. Louis, Iron Mountain & Southern Railway Company, and that during the existence of said strike because of the interference of the strikers and others acting in concert with them no live stock or freight trains could be or were run over said line.   Geismer v. L. S. & M. S. Ry. Co., 102 N. Y., 563, 570; P. & C. Ry. Co. v. Hazen, 84 Ill., 36; S. C., 25 Am. Rep., 422; Railway v. Hallowell, 65 Ind., 188; S. C., 32 Am. Rep., 63; Bennett v. L. S. & M. S. Ry. Co., 6 Am. and Eng. Ry. Cases, 391; Bartlette v. Railway, 94 Ind., 381, 388.

4.   The court erred in refusing to permit the defendants to prove by the depositions of D. S. H. Smith, C. H. Warner, S. D. Barlow, B. S. Johnson, and Geo. E. Dodge, officers and attorneys of the St. Louis, Iron Mountain & Southern Railway Company, that said railway was operated independently of these defendants or either of them; that it managed its own affairs, and that no partnership or other running arrangement between it and defendants or either of them existed.

5.   At common law a common carrier may by special contract limit its liability for loss or damage not occasioned by its negligence, provided the limitation be reasonable and just in the eye of the law; and where as here a contract of carriage is made in one State to be performed partly

in that State and partly in other States, the validity of the contract is to be tested by the law of the State where made, with the presumption existing in absence of proof as to what the law of such State is that the common law rule permitting reasonable limitations obtains there. We submit, therefore, that the exception in this contract relieving the carrier from liability for any loss or damage resulting from delay in transportation occasioned by a strike, etc., was reasonable and just when viewed in the light of the proof proffered by defendants, and that the court should have given effect to the presumption that the contract was valid in Kentucky and admitted the evidence tendered to prove the defense pleaded. There is no presumption that the statute law of Kentucky is the same as that of Texas, and plaintiff having averred the fact should have proved it.

Common carrier may at common law limit its liability. Laws. on Con. of Carr., sec. 211, and authorities there cited.

Contract governed by the law of the place where made. Ryan v. Railway Co., 65 Texas, 14, 15; Lawson on Con. of Carr., sec. 211; Pa. Railway Co. v. Fairchild, 69 Ill., 260, 263; Hale v. Steam Nav. Co., 15 Conn., 539; Talbot v. Merchants Trans. Co., 41 Iowa, 247; Rorer on Interstate Law, 45; Scudder v. Nat. Bank, 1 Otto, 406; McDaniel v. Railway Co., 24 Iowa, 412, 417, 418.

Party alleging what the law of another State is must prove it. Rorer on Interstate Law, 118; Carey v. Railway, 5 Iowa, 357; Bean v. Briggs, 4 Iowa, 464; Pearsall v. Dwight, 2 Mass., 84; Walker v. Maxwell, 1 Mass., 104; Legg v. Legg, 8 Mass., 99.

In the absence of proof the presumption is that the common law rule with recognized exceptions is the law of the place where contract was made. Dunn v. Adams, 1 Ala., 527; Crouch v. Hall, 15 Ill., 265; Miles v. Collins, 1 Metc., 312; Throop v. Hatch, 3 Abb. Prac., 27; Forbes v. Scannell, 13 Cal., 278; Houtaling v. Ball, 19 Mo., 84; Ellis v. Maxon, 19 Mich., 186.

No presumption exists that the statute law of a sister State is the same as statute law of forum. Throop v. Hatch, 3 Abb. Prac., 27; Forbes v. Scannell, 13 Cal., 278; 47 Barb., 549; Houtaling v. Ball, 19 Mo., 84; Ellis v. Maxon, 19 Mich., 186.

*Fisher & Townes,* for appellee. —1. When a pleading is founded upon any contract in writing which is charged in the plea to have been executed by the defendant in person or by another duly authorized, the issue of the genuineness of such instrument or the authority of the party to bind the defendant can not be raised except by plea under oath. Rev. Stats., art. 1265, subd. 8; Bradford v. Taylor, 61 Texas, 508; City Water Co. v. White, 61 Texas, 536.

2. If the allegations do not show technically a partnership they set

out facts constituting the transaction a joint enterprise and show mu-tual agency between the parties creating a joint liability. The act of one of such joint contractors in the receipt of and handling freight was the act of all. The evidences of a joint liability are, first, through bill of lading; second, through charges; third, freight to .be carried without change of cars; fourth, share of profit and loss. It is not necessary that all these should concur if sufficient appears in the facts and circumstances to show the joint liability or agency. H. & T. C. Ry. v. Burke, 55 Texas, 333; G. C. & S. F. Ry. Co. v. Allison, 59 Texas, 193; W. & W. Ct. App. C. C., secs. 318, 328, 431; G. C. & S. F. Ry. Co. v. Golding, 6 Texas Law Jour.; W. & W. Ct. App. C. C., secs. 942, 1252, 1253; Hutch. on Carr., arts. 158, 160, 161, 162, 169, 170; 2 Redf. on Rys., arts. 171, 180, 181.

3. Liability of common carrier at common law is that he must ship in safety, within reasonable time, and he must make good all loss not occasioned by act of God or public enemy. A strike is clearly not an act of God, nor are strikers public enemies in a technical sense as the term is used in this connection. A public enemy is a nation at war with the United States. The hostilities must be the act of the foreign government. Mobs, no matter how numerous, are never considered a public enemy, and the facts set up in appellants' answer are not sufficient to relieve at common law. 2 Redf. on Rys., 167, 188; Hutch. on Con., pp. 44, 171, 203, 249, 250, 310, 292.

Strikes. Hutch. on Carr., 205; Redf. on Rys., 10; 1 Add. on Con., sec. 327.

Public enemy. Bouv. Law Dic., Public Enemy, and authorities there cited.

HOBBY, JUDGE.—The several phases of the leading defenses upon which appellants rely, presented by the different assignments, are substantially that there was no proof except the contract under which the stock was shipped at Franklin, Kentucky, that the agent Jenkins, who executed it for the Louisville & Nashville Railroad, was the agent of defendants or had authority as their agent to execute the same.

That there was no proof of any arrangement in the nature of a partnership existing between said company and defendants, or that the defendants' road connected with said Louisville & Nashville Railroad, or with any line with which it connected; that under the stipulations in the shipping contract the plaintiff assumed all risks of loss or damage from delay or detention of the stock caused by mobs, strikes, etc.; that the jack for the loss of which defendants were sued was never delivered to them.

That a strike was pending on the St. Louis & Iron Mountain Railroad at the time of the arrival of said stock at Little Rock, Arkansas, and said

stock could not be transported over said road for that reason from March 7, 1886, to April 2, the time of the detention of said stock, which road it was necessary to transport said stock over to reach defendants' road; that no damage was recoverable by plaintiff in excess of the amount limited by the contract as the value of the jack or stallion at the place of shipment, namely, $200.

The defense with respect to the absence of proof by plaintiff of the authority of Jenkins to execute as agent for the defendants the contract sued on, is involved in the assignment that the court erred in refusing to permit the defendants, on cross-examination of plaintiff, to inquire whether Jenkins, who signed the contract on which the stock was shipped, was the agent of the defendants, and whether any running or other arrangements as to through shipments existed at the time of the execution of the contract by which said defendants, or either of them, would be bound to carry out the terms of said contract. The question was objected to by plaintiff on the ground that there was no plea verified by affidavit denying the authority of said Jenkins to execute said contract, and there was no such denial of the partnership or running arrangements alleged by plaintiff to have existed between the defendants and the contracting carrier and connecting lines constituting the through route. The objection was sustained and defendants excepted.

The argument of the appellants is that the contract upon which the suit is founded does not purport to be executed by defendants nor by any one purporting to have been their agent, and in this connection it is contended that if it can be so construed that no recovery can be had for any loss not occurring on defendants' road, in the absence of affirmative proof that said Jenkins was not the common agent of defendants and the Louisville & Nashville Railroad, or that there existed at the time a partnership or running arrangement as to through freight of such character between said road and defendants as would render the latter liable.

The effect of a plea of *non est factum* and the failure to file it under the statute was referred to in Bradford v. Taylor, 61 Texas, 510, and in City Water Works v. White, Id., 538.

In the last mentioned case the statute providing that "a denial under oath of the execution by himself or by his authority of an instrument in writing upon which a pleading is founded, in whole or in part, and charged to have been executed by him or his authority," etc., was discussed and construed, and the cases collated in which it had been also previously construed.

In the case cited it was held "that the fact that the instrument was not free from ambiguity and did not clearly purport to be the act of the defendant did not take it out of the operation of the statute." It appears from the pleadings in the present case that the suit is founded upon

an instrument in writing charged to have been executed by the authority of the defendants.

There was no denial of this plea verified as required by affidavit, and there was consequently no error in the action of the court complained of. Neither was there any such denial of the partnership which was charged by the petition to have existed at the time of the shipment of the stock between the receiving carrier, the defendants, and other connecting roads constituting the through line between the place of delivery (Franklin, Kentucky) and the point to which the stock was to be transported (Georgetown, Texas). Such being the case it did not devolve on the plaintiff to make affirmative proof of either the execution of the contract by the authority of defendants or that the partnership existed. If this was necessary in the shape of the pleadings, the statute requiring both of these alleged facts to be denied under oath would accomplish no purpose. Its object is to require that these facts shall be put in issue by a sworn denial, and if this is not done in the manner pointed out they are admitted facts and not issuable; and if not issuable by reason of a non-compliance with the statute which prescribes the manner in which such facts shall be made so, there can be no occasion for proof of them, upon the elementary principle that a fact not made an issue by the pleadings is not necessary to be proven. See cases cited and Lindsay v. Jeffray, 55 Texas, 641.

But even if the burden of proof in this case was on the plaintiff to establish a partnership or joint undertaking between the defendants and the Louisville & Nashville Railroad as connecting carriers, this we think sufficiently shown by a through bill of lading or receipt from Franklin, Kentucky, to Georgetown, Texas, through freight charges, that the stock was to be carried in a designated car, which are said to be facts from which it may be inferred. Hutch. on Carr., sec. 152; Laws. on Carr., p. 357. To this may be added the further fact of the payment of the freight charges to the appellants' agent at Georgetown. The liability of the carriers where there are connecting lines, and which carrier may be sued, has been the subject of much discussion.

The English doctrine is, that in the absence of a special contract the first carrier is liable to the destination—that he is exclusively liable; for want of privity of contract the connecting carrier can not be sued by the shipper even though his negligence caused the loss. One of the consequences of this rule has been to restrict the right of action against the first carrier, even though the loss or damage may have occurred through the fault or neglect of the one sought to be charged. But this rule as well as this consequence is rejected by the American cases, and is adhered to only by the Georgia courts. The American rule is in case of connecting carriers that the action will always lie against the carrier in whose custody the goods were when lost or damaged. Laws. on Carr., sec. 241.

If there was a partnership or common undertaking existing between the defendants and other connecting roads between Franklin, Kentucky, and Georgetown, Texas, constituting a through route for the transportation of stock as common carriers (and this was not necessary to be established by proof 'as there was no denial under oath of such partnership), and if the authority existed in the agent at Franklin, Kentucky, of the Louisville & Nashville Railroad Company to execute the contract for defendants upon which the suit is founded (and this for a similar reason was not necessary to be shown, though we think it was sufficiently established), then the liability of the defendants as common carriers for damage to the stock or delay in its transportation attached at the date of the delivery to the contracting carrier.

Appellants offered to show by the depositions of C. H. Warner, S. D. Barlow, B. S. Johnson, and others witnesses "that from about the 7th or 9th of March, 1886, when said live stock reached Little Rock, until about the 2d or 3d of April, 1886, a strike was pending along and over the lines of the St. Louis, Iron Mountain & Southern road; that during the existence of said strike no freight or live stock trains could be or were run over the lines because of the interference of the strikers and those acting in concert with them; which was excluded by the court upon objection upon the ground that a strike or other violent interference with the business of a railroad company constituted no defense," etc. This is assigned as error.

The evidence on the trial was plainly to the effect that the damage occasioned by the injuries inflicted on the stallion occurred after the strike and while being transported over the defendants' road. This was assessed at $100, one-half of the value of the horse stipulated in the contract. The jack never having been delivered to plaintiff the value as stipulated in the contract in event of his loss was found ($200). The amount found by the court as damage for the loss of the use of the horse during the detention caused by the strike was $100. It is apparent then that the evidence offered by the appellants and the exclusion of which is assigned as error could have had no application to any other item of damage than that last mentioned.

That the carrier is liable for damages arising from the failure to transport the stock within a reasonable time is well settled. But what- is a reasonable time under the particular facts of the case or what circumstances will excuse the failure to deliver within a reasonable time the carrier would have the right to show in order to relieve itself of liability for this element of damage. The evidence offered to relieve the carrier of liability caused by the detention of the horse was that "a strike existed, during the existence of which no freight or live stock trains could be or were run over the lines by reason of the interference of strikers and those acting in concert with them." This we think was admissible for the pur-

pose of showing a sufficient excuse for the failure of appellants to deliver the horse during the period of his detention at Little Rock.

If, as was proposed by the proof offered, it could be shown that "no freight or live stock trains were or could be run over the road because of the interference of the strikers," it might have shown that the horse was under the circumstances delivered within a reasonable time or a sufficient excuse for the failure to deliver within such time, and in either event would have relieved appellants of liability for this item of damage found by the court—i. e., the "use of the horse for three weeks, $100."

We are of opinion that there was error in excluding the testimony offered upon this point; but as the appellee proposes to remit this amount, which alone could have been affected by the evidence referred to, and there being no other error, we think that upon such remittitur being entered the judgment should be affirmed in all other respects.

*Affirmed.*

Adopted May 10, 1889.