THE MISSOURI PACIFIC RAILWAY COMPANY v. J. L. EDWARDS ET AL.

No. 2789.

1.  **Pleadings by Plaintiff.**—Action for damages for cattle killed and injured in shipment upon a railroad.  The petition alleged that 500 head worth $16 each were killed, and 620 injured to extent of $6 or $7 each.  *Held,* that exceptions to the peti-

tion because the number killed and number injured and value were not specifically stated were properly overruled; the allegations were sufficient.

2. **Same—Charge.**—When the number and value of cattle killed and the number and extent of injury to others shipped were alleged, and there was testimony tending to show the average value of those killed and injured, and from which the number of each could be ascertained by the jury, it was not error in the court to refuse an instruction asked that "if the proof failed to show the number of dead and injured among the yearlings, 2-year-olds, and bulls, then as to such death and injury you will find for the defendant."

3. **Extent of Injury to Cattle Injured in Shipment.**—In an action for damages against a railway company for the death and injury of cattle shipped upon its road it was not incompetent to show that cattle died after the delivery from injuries received while being conveyed by the railway, and from its negligence.

4. **Stipulation for Measure of Damages by Common Carrier.**—It seems that an agreement exacted by a common carrier that the value of cattle shipped upon its road if lost should be paid for by the railway company at the value at the place of shipment, is against public policy and void.

5. **Case Limited.**—International & Great Northern Railway v. Tisdale, 74 Texas, 17, limited in so far as it apparently sanctions a contract which limited the damages for stock lost to the value at place of shipment.

6. **Contributory Negligence—Negligence by Shipper in Loading.**—Plaintiffs shipped from Hill County, Texas, to New Mexico, several car loads of cattle consisting of cows, 1-year and 2-year-old heifers, and 25 bulls. The cattle were poor and weak and all sizes loaded together. The defendant pleaded contributory negligence in the shipper. The court only submitted the issue of overloading and refused a special charge calling attention to the promiscuous loading, which was shown to be improper, as an element in defense. *Held*, that such instruction should have been given, and its refusal was ground for reversal.

APPEAL from Tarrant. Tried below before Hon. R. B. Willing, Special District Judge.

The opinion states the case.

*Finch & Thompson*, for appellant.— 1. In a suit for loss and damage to a shipment of cattle plaintiff should be required to allege and prove the exact number lost and the exact number damaged.

2. In a suit for damages to shipment of stock the measure of plaintiff's recovery, where there is no contract, could only be the value of such as died en route and before delivery to plaintiff at place of destination, and the damage to the remainder at the same time and place.

3. In a suit for damages to stock shipped under a special written contract executed by the shipper in consideration of a reduced rate of freight and round trip passes for men who accompany the stock, the measure of damage can not exceed the market value of stock at place of shipment where contract so provides. Railway v. Tisdale, 74 Texas, 8; Railway v. Caldwell, 3 Ct. App. C. C., 530; Hart v. Railway, 112 U. S., 331–343.

4. The court erred in refusing defendant's first special charge, because if plaintiffs loaded said cattle without reference to their age, sex, or size, and by reason thereof they were damaged, then plaintiffs' contributory negligence would bar a recovery for such damage.

5.   If the negligence of appellees contributed to the damage of their cattle in either of the modes pointed out by the special charge, and there was evidence to support the charge, then the same should have been given by the court, as contributory negligence was specially pleaded and relied on by appellant.   Railway v. Le Gierse, 51 Texas, 189; 6 Wait's Act. and Def., p. 583; Railway v. Smith, 2 Ct. App. C. C., sec. 138; Railway v. Graves, 2 Ct. App. C. C., sec. 678.

*D. F. Singleton, M. B. Templeton,* and *Ball, Wynne & McCart,* for appellees.— 1.  Plaintiffs alleged the value of the cattle that died and the number injured and extent of injury, and supported the same by proof. Railway v. Broussard, 75 Texas, 702.

2.   Plaintiffs are entitled to recover for any damages to their cattle by reason of the negligence of defendant, and it is immaterial whether the cattle died before or after they were delivered to plaintiffs at the place of destination, provided the evidence shows that the cattle died from injuries received while in the hands of defendant by the negligence or improper handling of defendant.

3.   Railway companies in this State can not limit or restrict their liability as it exists at common law by inserting a measure of damages in the bill of lading or contract of shipment restricting and limiting the shipper's right to recover for the damages resulting from the company's negligence in the shipment.   Railway v. Trawick, 68 Texas, 314; Railway v. Fagan, 72 Texas, 127; Railway v. Harris, 67 Texas, 166.

4.   The court charged the jury upon the contributory negligence of plaintiffs fully under the pleadings and evidence in the case.   Railway v. Trawick, 68 Texas, 314.

5.   The stipulations in the contract of shipment offered in evidence by defendant as to the measure of damages was contrary to law, and the charge of the court sufficiently submitted to the jury the question of injury to the cattle by reason of inherent vice of the cattle, the condition when received, and the manner of loading, under the proof in the case. Railway v. Fagan, 72 Texas, 127; Railway v. Trawick, 68 Texas, 314; Railway v. Harris, 67 Texas, 166.

HOBBY, JUDGE.—Appellees J. L. Edwards and B. Gatewood sued the Missouri Pacific Railway Company on June 28, 1886, to recover damages on a through shipment of cattle from Itaska, Texas, to Deming, New Mexico.

The grounds upon which they claimed a recovery were the delay on the part of appellant in transporting the cattle and the reckless and negligent manner in which the appellant's servants operated and handled their train, resulting in bruising and injuring the cattle; and upon the further ground

of the inadequate provision made by appellant for the proper and necessary feeding, watering, and penning of said cattle.

Appellant filed general and special demurrers and a general denial. It also specially alleged that any injury sustained by appellees was the result of their contributory negligence.

There was a trial, verdict and judgment for the appellees for $9500 and interest. Two thousand dollars of this amount appellees remitted in the court below.

This appeal appellant prosecutes and assigns numerous errors.

The second and twelfth errors assigned may be properly disposed of together. The second is based on the court's action in overruling the special exception to the petition. This exception was on the ground that the petition did not state how many of plaintiffs' cattle died in transit, nor how many in the aggregate, nor the number and value of those alleged to have been injured. The exception was not well taken. It was alleged that 500 head of cattle were killed, reasonably worth $16 per head; and that 620 head were injured, etc., to the extent of $6 or $7 per head. This was sufficiently specific.

The twelfth error assigned is that the court refused to give a special charge asked by defendant below, to the effect that there must be evidence of the exact number of the dead and injured cattle for the plaintiff to recover, and that "if the proof failed to show the number of dead and injured among the yearlings, 2-year-olds, and bulls, then as to such death and injury you will find for defendant."

It is only necessary, we think, to say that the instruction requested was too restrictive in its character. There was testimony showing the average value of the killed and injured cattle, and also testimony from which the number of each could be ascertained by the jury. This was sufficient. It was not necessary that the evidence should have shown with absolute certainty the number.

The next assignment is that "the court erred in overruling exceptions to that portion of the petition claiming damages on account of cattle which may have died after their arrival at Deming, the point of destination; and also erred in admitting the testimony of the witnesses Kelly and Edwards as to the number of cattle which died up to four and six weeks after their arrival at Deming, because said damage is too remote."

The fact alone that the cattle died after their delivery at the point of destination would not relieve the appellant of liability. The true test of its liability in this connection would, we think, depend upon whether the death of such cattle was the result solely of injuries received by reason of appellant's negligence while transporting them. We do not, therefore, think the damage is too remote because the cattle died after delivery. The court did not err with respect to the matter complained of.

The court charged the jury that the measure of damages would be the

market value of the cattle killed or injured at the time and place of delivery. It is claimed that this was error, because under the contract of shipment a different measure of damages is stipulated.

Plaintiffs alleged in the first count of the petition the delivery to defendant at Itaska, Texas, of 1120 head of cattle, worth $30,000; that they contracted with defendant to ship the same safely, etc., to Deming, New Mexico, at $75 per car, to be paid by plaintiffs at point of delivery. Plaintiffs further allege delay and negligence on the part of defendant in transporting said cattle, and the death and injury of the cattle caused by said delay and negligence. The number killed and injured are stated, and the extent of the injury to the remainder is set forth, and the damages are laid at $15,740.

The second count alleges the same as to damages, and contains the following: "That after they delivered said cattle in the railroad pens at Itaska on the 27th day of April, 1886, they were compelled by defendant to execute two written and printed contracts and agreements, there being two trains of said cattle, and said contracts and agreements being signed in duplicate and delivered to plaintiffs and defendant. Plaintiffs say that the contracts and agreements signed by them have long since been lost, mislaid, or destroyed, so that they are unable to state the contents thereof more than to state that defendant thereby undertook and agreed to transport said cattle for plaintiffs from Itaska station to Deming, New Mexico, at the rate of $75 per car, the number of cars being placed at the margin thereof; that in addition thereto there were in said contracts numerous and voluminous printed conditions, the effect of which was to in many ways attempt to limit the liability of defendant as a common carrier, the language and even substance of which plaintiffs are unable to give, but all of which plaintiffs are informed and charge were inoperative and void as being unreasonable and in contravention of the statute and law of common carriers," etc.

The special answer by defendant was that "if plaintiffs were injured or damaged at all, as plaintiffs have alleged, then the same was caused and occasioned by the carelessness and negligence of plaintiffs, their agents and servants, and this it is ready to verify."

Under this state of the pleadings the plaintiffs offered no written contract in evidence, but testified to the delivery of the cattle to defendant, the manner in which they were transported, and offered other evidence in support of the petition. The shipping contract in writing was offered in evidence by the defendant. The seventh clause of that contract provided that the company should be liable in case of total loss of any of the stock to the extent of the actual cash value at the time and place of shipment, in no case to exceed $100 per head.

The appellant did not rely upon this defense, nor was the stipulation set up in the answer as one existing by virtue of a contract between the

parties and invoked by appellant as the measure of damages in the case. Had it been so pleaded it was such a limitation upon appellant's liability as would be in violation of law. In the case of the International & Great Northern Railway Company v. Tisdale, 74 Texas, 17, cited by appellant, no question was raised as to the validity of the stipulation in the shipping contract fixing the measure of damages at the value of the stock at place of shipment in event of its loss in transitu. Nor was there any assignment calling for an expression of opinion upon that subject.

The most serious question in this case, we think, is raised by the fifth, ninth, tenth, and eleventh assignments, which is substantially that the court erred in refusing the special instruction asked by appellant, to the effect that if the plaintiffs loaded said cattle without reference to their age, sex, condition, or size, and by reason thereof they were damaged, then such contributory negligence would bar a recovery for such damage.

The appellee Edwards testified that "We loaded these cattle promiscuously. Some of the cows were scattered from one end of the train to the other, and some of the yearlings. * * * There were about 43 head to a car. * * * There were about 500 yearlings and 484 2-year-olds and 25 bulls and 111 cows. * * * These 25 bulls we had were mostly 1-year-old bulls, and the others were 2-year-olds. The putting of these bulls with the heifers in the shipment I don't think had any effect either one way or the other any more than if they had been cows and heifers. The cattle were not overly crowded. None of the bulls were over two years old; they were mostly 1-year-old. There were 500 1-year-old heifers in the shipment and 484 2-year-old heifers. I don't think the bulls did any damage to the heifers."

J. C. Richardson testified that he was in the cattle business. That if he had a shipment of cattle consisting of say 500 1-year-olds and 484 2-year-olds, 25 bulls and 111 cows and 8 or 10 head of calves, he would want to ship the bulls by themselves if he could, but if he could not he would ship them and the cows together and ship the yearlings and 2-year-olds together. That he could not say what would be the effect of mixing the bulls with cows and others, but had never found it advisable, because the larger cattle overturn and lie down on the smaller cattle. Whether or not the 25 bulls could be loaded in one car would be owing to the size of the car. Said he knew something about the size of the cars on the Missouri Pacific Railway; that they would hold from 21 to 23 large bulls; that they were 33-foot cars and would hold on an average about 25 head of cows; that he could load 35 to 40 head—not over 40 head—of 1-year and 2-year-olds in these cars. There was quite a difference between 30-foot and 33-foot cars. That if these bulls were yearling bulls he could ship them along with the yearlings and 2-year-old heifers; if they were yearling bulls they could be put promiscuously with the others and it would not make any difference in that respect.

B. Hackett testified: "I am a stockman; have been engaged in that business about 15 years, shipping principally. In a shipment of say 500 yearlings, 484 2-year-olds, 25 bulls, 111 cows, and a few cavles, the bulls ought to be put by themselves and the cows ought to be put by themselves. If you mix them up with 1-year and 2-year-olds the smaller ones are apt to get down and be trampled. If you mix 1-year and 2-year-olds together you ought to put 35 in a 33-foot car, the cows and bulls not being mixed with them. It would not be improper to mix ones and twos together. It would be best to ship them separately, though you can ship them together very well."

In addition to the foregoing there was testimony that "the cattle were poor and weak and all sizes loaded together," and that when they reached Deming they had the appearance of having been trampled on, and were much bruised.

Under this state of proof the court's charge was in substance that if the injuries to the cattle resulted from any act of the plaintiffs in "overloading" the cars, or from the inherent vice, etc., in the cattle to injure each other, the jury would find for defendant for the cattle so injured.

It is clear, we think, from the evidence above quoted that the well defined issue was raised whether the manner in which plaintiffs loaded the cars with their cattle was the cause at least of some of the injuries sustained by them, and if so to what extent. The question having been made by the answer and the testimony before the jury, it should have been distinctly submitted to the jury in the charge. The instruction given upon this point restricted the jury in the consideration of the character of injuries to the cattle which would absolve defendant from liability to those only arising from the "overloading" of the cars. They might have well concluded from the charge that plaintiffs were entitled to recover for such as resulted from the "promiscuous loading" of the cattle, as the only contributory negligence which precluded plaintiffs from a recovery tested by the charge was that growing out of the "overloading" of the cars.

This was not the correct rule in this case. Appellees were not entitled to recover for injuries, if any, resulting from the improper and promiscuous intermingling of the cattle, and the jury should have been so instructed, as requested.

The remaining assignments relate to an alleged excess in the verdict, and the right of appellees in this case to enter a remittitur in the sum of $2000. As they are questions not likely to arise upon another trial we do not think it necessary to consider them.

For the error we have mentioned, we think the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted October 28, 1890.