CHARLES DILLINGHAM, RECEIVER OF HOUSTON & TEXAS CENTRAL
RAILWAY COMPANY, v. JOSEPH. FISCHL.

No. 34.

1. **Suit for Penalty for Refusal to Deliver Freight.**—A St. Louis milling company shipped to appellee, at Brenham, a car load of flour, the bill of lading for which (issued by the St. Louis, Arkansas & Texas Railway) showed that the rate of freight was 40 cents per 100 pounds, and that it was to be sent via the Gulf, Colorado & Santa Fe Railway. The schedule rate on flour to Brenham via the Gulf, Colorado & Santa Fe Railway was 40 cents per 100 pounds, and via Houston & Texas Central Railway was 53 cents per 100 pounds. The flour came by the Houston & Texas Central Railway, which refused to deliver it unless the 53 cents rate was paid. *Held*, the penalty provided by statute for a failure to deliver merchandise upon tender or payment of freight charges shown by the bill of lading, can not, in this case, be enforced against the Houston & Texas Central Railway.

2. **Offer by Shipper to Pay Difference in Freight Charge.**—Evidence offered by the appellant, that the milling company offered to hold appellee harmless, and to pay the difference between the 40 and 53 cents rate, was inadmissible. If the appellant was liable for the penalty, appellee could not be deprived of his right to recover it by the willingness of a third party to pay the difference. Had this difference been paid by the shipper, and then the goods tendered to the consignee upon payment of the remainder, it may be that from the time of such tender he would have been relieved from liability, but appellee was under no obligation to assist him in relieving himself from liability that he had or might thereafter incur.

3. **Conflict of Law—Act of Congress and State Statute.**—The act of Congress requires that the schedule of rates be agreed upon and published, and denounces penalties upon any carrier who receives more or less than schedule rates. The State statute provides that any carrier who shall refuse to deliver freight upon tender or payment of the freight charges shown by the bill of lading, shall be liable for an amount equal to the freight charges for each day's delay. This State law demands that the carrier should do a thing that is forbidden by a constitutional law of Congress, and that law is paramount to any State law when the provisions of the latter are antagonistic to those of the former.

4. **Notice of Contract to Ship at a Particular Rate.**—It is immaterial whether the defendant company knew or did not know that the receiving carrier had contracted to transport the freight at 40 cents per 100 pounds. It was required by statute to receive the cars of connecting roads, and under its contract with the connecting road was under obligation to carry its freight at an agreed rate, which rate could not be changed except by violating the Federal statute. Therefore it could not be said to have adopted and ratified the 40 cents bill of lading, even if it knew that that was the rate agreed on.

5. **What Companies Liable for Penalty.**—Unless the evidence shows that the company refusing to deliver the freight to the consignee upon payment or tender of the specified rate of freight either executed the bill of lading or ratified it, no recovery can be had under the statute.

6. **Non Est Factum.**—Plaintiff's petition does not charge that the defendant executed the bill of lading, or authorized any one to execute the same, nor

that there was a partnership between the defendant and the company that executed the bill of lading, and therefore a plea of non est factum was not necessary before defendant could challenge its binding force upon him.

Appeal from Washington. Tried below before Hon. C. C. Garrett.

*O. T. Holt*, for appellant.— 1. The court erred in not permitting defendant to prove that the milling company offered to pay the difference between the 40 and 53 cents rate. Brandon v. Manfg. Co., 51 Texas, 121.

2. If the established schedule rate via the Houston & Texas Central Railway was 53 cents per 100 pounds, appellant, under the act of Congress, could receive neither more nor less. Act of Congress entitled "An act to regulate commerce," and amendments thereto; Railway v. Illinois, 118 U. S., 558; Hall v. De Cuir, 95 U. S., 485; Ferry Co. v. Pennsylvania, 114 U. S., 196; State Freight Tax, 15 Wall., 281; Fargo Presidents v. Stevens, 121 U. S., 230; County of Mobile v. Kimball, 102 U. S., 618; Railway v. Walsh, 47 Fed. Rep., 406; Stanley v. Railway, 13 S. W. Rep., 709; Baird v. Railway, 41 Fed. Rep., 592; McCall v. People, 136 U. S., 104; Railway v. Pennsylvania, 136 U. S., 114.

*Searcy & Garrett*, for appellee.— 1. The contract of shipment was a through bill of lading made between the St. Louis, Arkansas & Texas Railway Company and the appellee, and he was justified under the law in demanding his legal rights under the contract, and could not be made to rely upon the mere promise of indemnity from a third and irresponsible party and stranger to the matter in controversy. Railway v. Ragsdale, 67 Texas, 24; Warren v. Frederichs, 76 Texas, 647; Bullock v. Smith, 72 Texas, 545; 1 Greenl. Ev., sec. 193.

2. The appellee's suit was founded upon a written contract for shipment of the goods, alleged to have been executed by the proper authority of the St. Louis, Arkansas & Texas Railway Company, and its connecting lines, the appellant's road being one, and the appellant's adoption of said contract with full knowledge of its terms, thereby voluntarily forming a partnership with reference to the subject matter of the contract; and before appellent could challenge the genuineness or authority of said contract and its binding force on him, it devolved upon him to deny its genuineness or authority under oath. Railway v. Tisdale, 74 Texas, 8–16.

3. The statute of Texas is not a regulation of interstate commerce, but a simple exercise of the police power of the State, regulating the performance of a contract and providing a remedy for a breach thereof. The rate of 40 cents per 100 pounds from St. Louis, Missouri, to Brenham, Texas, was the lawful rate established under the act of Congress

over the route contracted for in the bill of lading, and a delivery of the goods at that rate would not have violated that act. Sayles' Civ. Stats., art. 4828a; Railway v. Dwyer, 75 Texas, 572; 69 Texas, 707; Railway v. Hannaford, 30 Am. and Eng. Ry. Cases, 67; Railway v. Fuller, 17 Wall., 560; Shulock v. Allig, 93 U. S., 99; Smith v. Alabama, 124 U. S., 463; Railway v. Alabama, 128 U. S., 96; Railway v. Husen, 95 U. S., 465; Coal Co. v. Railway, 26 Am. and Eng. Ry. Cases, 42.

PLEASANTS, ASSOCIATE JUSTICE.—This is an action in which the appellee, Joseph Fischl, who was the plaintiff in the court below, sued the appellant, Charles Dillingham, as receiver of the Houston & Texas Central Railway Company, who was defendant in the court below, in the District Court of Washington County, on the 22nd day of February, 1890, to recover the statutory penalty for refusing to deliver a car of flour shipped from St. Louis, Missouri, to Brenham, Texas, directed to appellee by the terms of the bill of lading. The penalty sued for was the sum of $94.88, the amount specified in the bill of lading, for each day the flour was detained.

The appellee was a merchant doing business in Brenham, Texas, and on or about the 16th day of December, 1889, appellee purchased a car of flour, weighing 23,720 pounds, from the Kaufman Milling Company, in St. Louis, Missouri. The contract of purchase was made through one Slater, who was the agent of the Kaufman Milling Company at Brenham, Texas; and on or about the said 16th day of December, 1889, the Kaufman Milling Company, acting for and on behalf of the appellee, Joseph Fischl, delivered said car of flour to the St. Louis, Arkansas & Texas Railway, which was then and there a common carrier from the city of St. Louis, Missouri, into the State of Texas, making connection with the Gulf, Colorado & Santa Fe Railway and the Houston & Texas Central Railway, leading to the city of Brenham, in the State of Texas.

The said St. Louis, Arkansas & Texas Railway Company issued, executed, and delivered to appellee's agent, the Kaufman Milling Company, in the city of St. Louis, Missouri, a bill of lading, whereby it acknowledged it had received said car of flour for shipment from St. Louis, Missouri, to Brenham, Texas, and it appeared from said bill of lading that the rate of freight on said flour was 40 cents per 100 pounds, via the Gulf, Colorado & Santa Fe Railway, from St. Louis to Brenham, Texas, and that said freight was to be carried via said railway (the Gulf, Colorado & Santa Fe); and when said car of flour arrived at its destination, Brenham, Texas, the appellee tendered the appellant the sum of $94.88, which was the amount specified in the bill of lading, which amount was declined, and 53 cents per 100, the established rate, demanded, which was refused by appellee.

The defendant answered by a general and special demurrer and general and special answer. The special demurrer was sustained. The special answer alleged, that said car of flour was shipped from St. Louis, Missouri, to Brenham, Texas; that when said car of flour reached and arrived at Corsicana, it was, in the due course of business, turned over to defendant for transportation to Brenham, and that said flour was carried to Brenham within a reasonable time and in good order and condition; that after said car of flour arrived at Brenham, its destination, the same was tendered to appellee, demanding of him the regular schedule rate, which he refused to pay, and left said flour in the possession of appellant.

That appellant, before and at the time of the shipment of said flour, had established schedule rates of freight, as required by the act of Congress, and that the schedule rate on flour from St. Louis, Missouri, to Brenham, Texas, was 53 cents per 100 pounds via the Houston & Texas Central Railway.

That the said St. Louis, Arkansas & Texas Railway did not run into the city of Brenham, and all goods and merchandise from Brenham via the Houston & Texas Central Railway was delivered to appellant at Corsicana, a station on the line of its road.

And the appellant further alleged and charged, that after said flour arrived in the city of Brenham, its destination, and after appellee refused to pay the schedule charges due thereon, that his (appellee's) agent, or some person for him in St. Louis, Missouri, the Kaufman Milling Company, telegraphed said appellee, Joseph Fischl, to pay schedule charges demanded of him by appellant, and that they would protect and hold appellee harmless, all of which appellee refused to do, but said flour remained in the possession of appellant for more than a month, when the appellee paid the schedule charges and took said flour.

The appellee demanded a jury, and said cause was tried and resulted in a verdict and judgment for appellee for $4079.84. A motion for a new trial was made and overruled, and notice of appeal given.

Appellant's first assignment of error is as follows: "The court erred in not permitting the defendant, Dillingham, to establish and prove the fact by the plaintiff and other competent testimony that the said Kaufman Milling Company proposed and would have held the plaintiff, Fischl, harmless, and offered to pay the difference between 40 and 53 cents per 100 pounds on the car of flour."

We are of the opinion that this assignment presents a proposition which can not be sustained, and that the court did not err in excluding the evidence offered by appellant to show that the appellee would not consent that the difference between rate of freight specified in the bill of lading and that demanded by appellant might be paid by the Kaufman Milling Company. If the appellant be liable for the penalty imposed by the stat-

ute for demanding more freight than that named in the bill of lading, and refusing to deliver the freight to the consignee until the freight demanded was paid by the consignee, the latter could not be deprived of the right to recover the penalty by the willingness of a third party to pay the difference in the freights. Had this difference been paid by the shipper to the appellant, and appellant had then made a tender to appellee of the goods, upon payment by the latter of the freight charges named in the bill of lading, it may be that from such tender by appellant he would have been relieved from any further liability under the statute. But it certainly was not incumbent upon appellee to aid and assist the appellant in relieving himself from any liability he had incurred to appellee, or would incur, by continuing to hold the goods after their delivery had been demanded.

The appellant's eleventh assignment is as follows: "The court erred in following the State statute when it conflicted with the act of Congress, and instructed the jury under the terms of the State statute to find for the plaintiff." This assignment presents the controlling question of the case, and upon its solution depends the affirmance or reversal of the judgment of the lower court. The evidence shows, we think, beyond cavil, that the carload of flour, the alleged illegal detention of which by appellant is the basis of appellee's suit, was purchased by appellee's agent in St. Louis, Missouri, and by him delivered to the agent of the St. Louis, Arkansas & Texas Railway, a common carrier from the State of Missouri into the State of Texas, and that said railway had connection with two railways in the State of Texas, to-wit, the defendant railway and the Gulf, Colorado & Santa Fe Railway, and that with each of the said railways the said St. Louis, Arkansas & Texas Railway had, at and previous to the delivery of said flour, an agreed and established rate of freight between the city of St. Louis, in Missouri, and the city of Brenham, in the State of Texas; that the rate of freight upon flour via the defendant railway was 53 cents per 100 pounds from St. Louis to Brenham, and that the rate via the Gulf, Colorado & Santa Fe Railway was 40 cents per 100 pounds, and that the St. Louis, Arkansas & Texas Railway, upon the receipt of the flour from the appellee's agent, promised and contracted, as evidenced by the bill of lading delivered to said agent, to carry said flour to Brenham, Texas, via the Gulf, Colorado & Santa Fe road, and to charge therefor 40 cents per 100 pounds, and that said flour was in fact carried by said St. Louis, Arkansas & Texas Railway to Corsicana, Texas, and there delivered to its other connecting line in the State of Texas, the defendant company; and that defendant did carry said flour, within a reasonable time and in good order and condition, to the city of Brenham, and duly notified the consignee, the appellee, that the flour had reached its destination, and tendered same to appellee upon payment by him of the freight charges at the rate of 53 cents per 100 pounds, which payment appellee

declined to make, and tendered to defendant's agent at Brenham the amount of the freight money agreed upon by his agent with the said St. Louis, Arkansas & Texas Railway, to-wit, the sum of $94.88, that being the amount of freight due, calculated at the rate of 40 cents per 100 pounds; and with said tender appellee exhibited his bill of lading and demanded the delivery to him of his goods, which demand was by the defendant company's agent refused, and the said goods were held by defendant until the 8th day of February, 1890, when appellee paid the sum of money demanded by defendant, to-wit, the sum of $125.72, and received said flour from defendant. And the evidence further shows, that the said cargo of flour was, when received by defendant at Corsicana, marked and way-billed for Brenham via defendant's railway, and not marked and way-billed via the Gulf, Colorado & Santa Fe Railway; and there is no evidence that defendant knew of the contract for shipment via the Gulf, Colorado & Santa Fe Railway. These facts show that the flour was interstate commerce, and that the defendant company and its connecting line, the said St. Louis, Arkansas & Texas Railway Company, were common carriers engaged in carrying interstate freight, and were answerable to the laws of Congress regulating interstate traffic. Norfolk v. Railway, 136 U. S., 114, and act of Congress entitled "An act to regulate commerce," approved in 1887, and its amendments.

By the act of Congress above recited, such carriers who agree upon rates of freight over their lines are required to publish the rates, and to deliver copies of same to the Interstate Railway Commission; and after said rates are so established and continuing in force, any such carrier, or the agent or servant of such carrier, who receives or demands either less or more freight than that previously agreed on and established, is guilty of a misdemeanor, and upon conviction is subject to fine and imprisonment.

By the statute of Texas (Act of May 6, 1882), any railroad company, its officers, agents, or employes, that shall refuse to deliver to the owner, agent, or consignee any freight, goods, wares, and merchandise, upon the payment or tender of payment of the freight charges shown by the bill of lading, shall be liable in damages to the owner of said freight, goods, and merchandise to an amount equal to the amount of the freight charges for every day said goods, wares, and merchandise may be held after payment or tender of payment of the charges due, as shown by the bill of lading. This act has been declared by our Supreme Court to be an exercise of the police power of the State, and that it is not in conflict with the Federal Constitution. Railway v. Dwyer, 75 Texas, 578–583.

Such being the law, the penalty imposed by the statute might be recovered from a common carrier engaged in interstate commerce. Had the goods of appellee been shipped by the contracting railway company, as it promised and agreed to do, via the Gulf, Colorado & Santa Fe Railway,

at the rate of 40 cents per 100 pounds, said rate having been previously agreed upon and established by said companies, and the said Gulf, Colorado & Santa Fe Company had refused to deliver his goods to appellee upon payment or tender of payment by him to said company of the freight charges as specified in the bill of lading, we have no doubt the appellee might recover the penalty imposed by the statute from said last named company.

But the question for our decision is not whether the law be in conflict with the Federal Constitution, and therefore void, but the question is, can the law be enforced when it demands of a common carrier employed in transporting interstate commerce the doing of that which he is forbidden to do by the laws of Congress, under the penalty of fine and imprisonment? To state this question, it seems to us, is to answer in the negative. A law of Congress, itself constitutional, is paramount to any State law, when the provisions of the latter are antagonistic to those of the former. We therefore conclude that it is immaterial whether the defendant company knew or did not know at the time it received the flour consigned to appellee that the St. Louis, Arkansas & Texas Railway had contracted with appellee to transport his merchandise at the rate of 40 cents per 100 pounds. The defendant was required by the statute of this State to receive the cars of roads connecting with it, and under its contract with said connecting railway the defendant was under obligation to carry freight tendered by said line at an agreed rate, and that rate neither the defendant nor the company delivering the goods to defendant could change except by violating the Federal statute. Under such circumstances, we do not think the defendant company could be said to adopt and ratify the bill of lading, if it received the goods with knowledge that the railway company tendering them had contracted with appellee to transport said goods at 40 cents per 100 pounds. And unless the evidence shows that the carrier refusing to deliver goods to the consignee upon payment or tender of payment of the freight specified in the bill of lading, either executed the bill of lading or ratified it, no recovery can be had under the statute. Dwyer v. Railway, 75 Texas, 572. We think the trial court erred in the application of the law to the facts of the case, and that the law was substantially presented in instructions one and two requested by appellant's counsel.

In answer to the contention of appellee, that the defendant should not be permitted to challenge the binding force upon defendant of the bill of lading, except under a plea of non est factum, it is sufficient to say that plaintiff's petition does not charge that the defendant executed the bill of lading, or that defendant authorized any one to execute same for defendant, nor does it charge that there was a partnership between defendant and the railway company which executed the bill of lading. In the case cited by appellee's counsel (Railway v. Tisdale, 74 Texas, 8) the

petition charged the existence of a partnership between the defendant company and the connecting railway companies.

For the error above indicated, our judgment is that the judgment of the lower court be reversed and that the cause be remanded for another trial in accordance with the law as enunciated in this opinion.

*Reversed and remanded.*

Delivered December 15, 1892.

Chief Justice GARRETT did not sit in this case.