## Justice, et al. v. Peters, et al.

(Decided February 18, 1916.)

### Appeal from Pike Circuit Court.

1. Deeds—Delivery.—A deed, to be effectual against a subsequent purchaser, must have been delivered to the grantee, or to some one for him, and accepted by the grantee.

2. Deeds—Delivery.—The delivery of a deed may be actual or it may be constructive, but, in either state of case, the intent of the grantor to transfer the title to the grantee is essential and necessary to constitute a delivery.

3. Deeds—Delivery—Intention Alone Will Not Constitute Delivery.— Intention alone will not constitute a delivery of a deed, but there must be some act, which evidences the parting of his power and control over the deed for the benefit of the grantee.

4. Deeds—Voluntary Deed for Benefit of Infant—Delivery.—Where a parent makes a voluntary deed for the benefit of his infant child if it is beneficial to the infant, the law presumes an acceptance of it, but a delivery of such deed is never presumed without evidence that it was the intention of the parent to deliver the deed, and thereby pass the title from him to the infant, accompanied by some act evidencing his parting with control over the deed for the benefit of the infant.

J. S. CLINE for appellants.

STATON & PINSON for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

In 1890 John Thacker conveyed a tract of land in Pike county to E. P. Justice, and thereafter, on January 20th, 1894, Matilda Thacker conveyed to E. P. Justice a tract of land adjoining the first named tract. E. P. Justice, with his family, resided on the first named tract, and in 1898 E. P. Justice and his wife, Nancy, executed a deed of conveyance for the two tracts of land to their two infant sons, James A. Justice and T. F. Justice, the first of whom was then eight or nine years of age and the latter fourteen or fifteen years of age. The proof does not very satisfactorily show what were the contents of this deed. It was never recorded, and in the year 1909 was destroyed. T. F. Justice and James A. Justice resided with their parents until after becoming twenty-one years of age, when they each married and went away to live to himself, T. F. Justice on the lands of his uncle nearby the lands where E. P. Justice continued to live, and James A. Justice upon lands several miles away. Some time shortly after 1898 the wife of E. P. Justice, who was living at the time the deed is alleged to have been made to their sons, died, and E. P. Justice, shortly thereafter, married again. He continued in possession of the lands and exercising authority over them as he had always done previous to the making of the deed to his sons, and in 1909 he sold and conveyed the portion of the land upon which his dwelling house and improvements stood and containing about thirty acres of the land to William Peters and his wife, Nancy J. Peters. He executed and delivered a deed to Peters and wife for the thirty acres of land for a consideration of $750.00, which they paid to him at the time of the execution and delivery of the deed. This sum seems to have been the full value of the land. Within a short time after he sold and conveyed the thirty acres of land to Peters and wife, they moved into the house upon the land, and E. P. Justice moved away therefrom, and thereafter purchased another tract of land upon Jonacan Creek, at a distance of three or four miles from his former place, and for the price of $400.00, and caused this land to be conveyed to his son, T. F. Justice. In January, 1912, the sons, James A. and T. F. Justice, filed this suit against Peters and wife and E. P. Justice, in which they alleged that E. P. Justice had sold and conveyed the land to them in 1898, and had delivered the possession

of it to them, and that he had thereafter, in 1909, sold and conveyed the land to Peters and wife, who they alleged had actual knowledge of the fact that the land had been previously conveyed to them, and that they were the joint owners of the land and that the claim of Peters and wife was casting a cloud upon their title, and prayed the court to adjudge that they were the owners of the land and that Peters and wife be required to release to them all of their claims thereto and that the deed executed by E. P. Justice and wife to Peters be cancelled.

Peters and wife filed an answer, in which they traversed the allegations of the petition and plead further that they were the owners of the land and were the *bona fide* purchasers of it for a valuable consideration, and without notice of any claim of ownership by James A. and T. F. Justice, and, further, that the appellants had, by their acts and words, induced them to buy the land, which they would not have done with knowledge of their claim to ownership of it, and they were now estopped on that account to claim the lands. These affirmative allegations were, by agreement, controverted upon the record.

A great quantity of very conflicting testimony was offered by each party, and upon submission of the case the court adjudged that the conveyance from E. P. Justice and wife to their two sons, James A. and T. F. Justice, was voluntarily made, without consideration, and that the deed was never delivered to them nor accepted by them; that Peters and wife were innocent purchasers for a valuable consideration and without notice of the existence of the deed from E. P. Justice to appellants, and dismissed the petition. The appellants, James A. Justice and T. F. Justice, excepted to the judgment of the court and have now brought the case by appeal to this court.

The proof shows that the appellees, Peters and wife, were in possession of the land at the time the suit was brought, and the only cause of action which the appellants had was a suit to cancel the deed, as it further developed in the evidence that, although the appellants claimed in their petition that they were the owners of the land, in fee, under the alleged deed by their father to them, when they came to testify, they claimed that

their father, E. P. Justice, had reserved in the deed, which he executed to them, a life estate for himself.

They also claimed that the consideration for the deed, and which was expressed in it, was the affection which E. P. Justice had for his children, and that the appellants would pay to each of their two sisters fifty dollars. Thus, the claim of appellants was reduced from the ownership of the entire interests in the lands and the holders of the possession, to a claim of ownership to a remainder interest in the land, after the expiration of the life estate of E. P. Justice, without any present possession.

The proof showed that the deed from E. P. Justice to appellants was burned by E. P. Justice, or by his direction, upon the day that he executed and delivered the deed to appellees, Peters and wife. The first question presented by the record for determination was, whether the deed from E. P. Justice to appellants was ever delivered to them, and if delivered, did appellees have notice of the execution and delivery of the deed before or at the time of their acceptance of the conveyance to them and the payment of the purchase price.

A deed, to be effectual against a subsequent purchaser for a valuable consideration, must have been delivered to the grantee or to some one for him, and accepted by the grantee. Owings v. Tucker, 90 Ky., 297; Bell v. Farmers' Bank, 11 Bush, 34; Colyer v. Hyden, 94 Ky., 180; Bunnell v. Bunnell, 111 Ky., 556; Collins v. Collins, 29 R., 51; Koger v. Koger, 29 R., 235; Hughes v. Eastern, 4 J. J. M., 572. Unless a delivery of the deed is made, the title never passes to the individual named as the grantee in the deed, and an acceptance must take place to make it effectual, because an estate can not be thrust upon one without his consent. In 8 R. C. L., 974, it is stated, "that there is no foundation for any rule that will sustain an undelivered deed, and no room for a presumption when the facts show there was no delivery, the question whether a deed was perfected by delivery being one which a court of equity regards precisely, in the same light as a court of law would." The delivery may be actual, or it may be a constructive delivery, but, in either state of case, the intent of the grantor to transfer the title to the grantee is essential and necessary to constitute a delivery. This intention to transfer the title must, however, be accompanied with some act of the

grantor, by which he parts with power and control over the deed for the benefit of the grantee, for intention alone will not constitute a delivery. Where a parent makes a voluntary deed for the benefit of his infant child, the law presumes an acceptance by the infant, if it is beneficial to the infant, but, before the deed is effectual, there must be some act by the grantor evidencing his parting with control over the deed for the benefit of the infant, accompanied with the intention to transfer the title to the infant by the deed. Although the parent is the natural guardian of the infant, the mere fact of having prepared a deed to the infant and, signing and acknowledging it, and then retaining the same in his possession, without any intention of ever parting with the control of the deed, has, in no case, ever been held to be a delivery of it, so as to pass the title from him to the infant, and from such acts the courts have never presumed a delivery, without evidence that it was the intention of the parent, 8 R. C. L., 1011. This court has held, that if one executes a deed to an infant of tender years, and causes it to be recorded, a delivery and acceptance is then presumed, because these acts supply the place of the old forms of livery of seizin, under the common law. If a deed is delivered to a third person for an infant, it is a valid delivery.

While there is some evidence in the case at bar going to prove that E. P. Justice delivered the deed to appellants, it always remained in his possession, and when appellants married and removed from his house the deed still remained there; they never caused it to be recorded, nor obtained possession of it. He declared to many witnesses, from time to time, that he only made the deed to please his wife; that he did not intend to deliver the deed to appellants at the time he made it, and never intended to do so; the appellants are proved to have had knowledge of his negotiations to sell the land to appellees and made no objection to it, one of them declaring to appellees that he had no interest in the land, and his father could dispose of it as he chose, and the other declaring the same to a neighbor; one of them assisted his father in removing from the house, after appellees had begun to occupy it, and thereafter accepted from his father a conveyance for a tract of land, which was purchased with a portion of the money received from appellees for the land in controversy. The appellants

have never paid their sister any of the sum, which they claimed the deed required them to do. While there is some evidence which militates against the conclusions above set out, the weight of the evidence proves that the deed from E. P. Justice to appellants was never delivered to nor accepted by them, and hence they did not own any interest in the land at any time. This was the conclusion arrived at by the chancellor below, who knew the parties and witnesses, and we see no reason to disturb his judgment.

Having arrived at this conclusion, it is unnecessary to discuss the other questions presented in the case, and the judgment is therefore affirmed.