SMITH v. SMITH. (No. 751.)

(Court of Civil Appeals of Texas. El Paso. Dec. 7, 1917. On Rehearing, Jan. 17, 1918.)

1. SALES ⚯⚮145—BILL OF SALE—ESSENTIALS.
    A bill of sale is not executed until it has been signed and delivered.

2. PLEADING ⚯⚮291(2)—DENIAL UNDER OATH —BILL OF SALE.
    If defendant desired to place in issue either the signing or delivery of the bill of sale pleaded by plaintiff, it was necessary for him to deny the same under oath, as required by Rev. St. 1911, art. 1906.

3. TRIAL ⚯⚮251(5)—INSTRUCTIONS—SUBMITTING MATTER NOT IN ISSUE.
    In the absence of a sworn denial, nondelivery was not an issue, and should not have been submitted to the jury.

4. EXECUTORS AND ADMINISTRATORS ⚯⚮450 —ACTION AGAINST—BURDEN OF PROOF.
    In an action by a wife against the executor of her husband's estate, the burden was on the executor to show that the wife had relinquished her rights under the bill of sale upon which suit was based.

5. TRIAL ⚯⚮205 — REFUSAL OF INSTRUCTIONS —BURDEN OF PROOF.
    It was error to refuse a charge that the burden of proof was on defendant as to certain issues, where the instruction that the burden was on plaintiff to make out her case by a preponderance of the evidence was so placed that it led the jury to believe that the burden was on plaintiff as to all issues.

6. WILLS ⚯⚮88(3) — DISTINGUISHED FROM BILL OF SALE.
    An instrument providing that a husband and wife have bargained, sold, and delivered unto persons named certain described personal property, that the husband is to enjoy the revenues arising therefrom during his natural life, and that upon his death the property shall immediately pass in "accordance with the terms of

this bill of sale," is not testamentary in character.

**7. SALES ⚎199—BILL OF SALE—TITLE—INTENT.**

If delivery of the bill of sale was made with intent that it should become operative, title vested.

**8. SALES ⚎199—DELIVERY—INTENT.**

The intent of the grantors in a bill of sale is the controlling question in determining whether delivery has been made.

**9. EVIDENCE ⚎431—PAROL EVIDENCE—DELIVERY—INTENTION.**

Parol evidence is admissible to show whether grantors in bill of sale by delivery intended bill to become operative.

**10. EVIDENCE ⚎417(9)—PAROL EVIDENCE—CONTRACTS PARTLY IN WRITING.**

Where the entire contract was not in writing, parol evidence was admissible as to those matters upon which the contract was silent.

**11. APPEAL AND ERROR ⚎232(2) — OBJECTIONS NOT URGED BELOW—EVIDENCE.**

Upon appeal the only objections to evidence which can be entertained are those which were made in court below.

**12. TRUSTS ⚎366(1)—SUIT AGAINST TRUSTEE —PARTIES.**

In suits by or against a trustee for recovery of trust property, the cestuis que trust are generally necessary parties.

*On Rehearing.*

**13. APPEAL AND ERROR ⚎1066—REVERSIBLE ERROR—INSTRUCTIONS — BURDEN OF PROOF.**

Where the burden of proof was on defendant to show payment and the evidence thereof was not conclusive, it was reversible error to refuse an instruction that burden was on defendant as to such issue where given instruction that burden was on plaintiff to make out her case by a preponderance of the evidence followed special issue of payment.

Appeal from District Court, Palo Pinto County; J. B. Keith, Judge.

Suit by Genevrie Smith against J. W. Smith. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Lea, McGrady & Thomason, of El Paso (on appeal only), McLean, Scott & McLean, of Ft. Worth, Wilson & Allen, of Mineral Wells, and Tillman Perkins, of Palo Pinto, for appellant. J. T. Ranspot, of Palo Pinto, and Penix & Miller, W. P. Smith, and Ritchie & Cousins, all of Mineral Wells, for appellee.

HIGGINS, J. Cicero Smith and Genevrie Smith were husband and wife. They had three minor children, viz. Susie, Esther, and Cicero, Jr. Cicero Smith had been twice previously married. By each of his first two wives he had three children. One of those, a girl, had died, but left surviving children, referred to as the Frost heirs. The other five children by the first two wives were J. W. Smith, Sidney Smith, Julius Smith, Mrs. Clemmie Patterson, and Mrs. Helen Davis. Cicero Smith had an estate valued at approximately $875,000. Part of this belonged to the community estate of himself and Genevrie Smith. The remainder was separate property of Cicero Smith, or belonged to the community estates of himself and his deceased wives.

On February 15, 1911, Cicero Smith prepared an inventory of his estate. The inventory first listed and valued his real and personal property. It then continues in the following words:

"Divisions:

| | | |
|---|---:|---:|
| To Mrs. Genevrie Smith and three children, Susie, Esther, and Cicero, Jr. | $140,000 00 | |
| Runnells county land, all Mineral Wells estate | 59,900 00 | |
| 200 shares Cicero Smith Lumber Co. | 42,000 00 | |
| 278 shares Graham National Bank | 33,369 00 | |
| 25 shares Western National Bank, Ft. Worth | 3,125 00 | |
| 40 shares Citizens' National, Stamford | 5,000 00 | |
| 30 shares First Nat. Bank, Santo | 4,500 00 | |
| 25 shares International Fire Ins. Co. | 3,750 00 | |
| To be paid from bills receivable | 78,395 76 | |
| Total to Mrs. Smith and three children | | $370,030 76 |

"Section 2, to Julius Smith:

| | | |
|---|---:|---:|
| One-third interest in Palo Pinto Jack county lands | $ 20,000 00 | |
| All Cottle county land | 7,000 00 | |
| 50 shares Cicero Smith Lumber Co. | 10,500 00 | |
| 75 shares First National, Mineral Wells | 11,250 00 | |
| 5 shares Commonwealth Fire Insurance Co. | 850 00 | |
| 52 shares Mineral Wells Cotton Oil Co. | 2,100 00 | |
| One-third interest in Morrison & Smith Lumber Co. | 8,000 00 | |
| Lakewood Park Railroad interest | 1,500 00 | |
| To be paid from bills receivable | 31,307 69 | |
| Total to Julius Smith | | 92,507 69 |

"Section 3, to Mrs. Clemmie Patterson:

| | | |
|---|---:|---:|
| Amount previously paid | $ 10,000 00 | |
| One-third interest Palo Pinto Jack county lands | 20,000 00 | |
| 2 acres on Ft. Worth Dallas Interurban | 3,000 00 | |
| One-third interest Ft. Worth lots | 4,000 00 | |
| One-third interest Morrison-Smith Lumber Co. | 8,000 00 | |
| 75 shares First National, Mineral Wells | 11,250 00 | |
| 50 shares Cicero Smith Lumber Co. | 10,500 00 | |
| 5 shares Estaline State Bank | 1,000 00 | |
| 25 shares Byars, Okl., Bank | 1,500 00 | |
| To be paid from bills receivable | 23,257 69 | |
| Total to Mrs. Patterson | | 92,507 69 |

"Section 4, to Mrs. Helen Davis:

| | | |
|---|---:|---:|
| Amount previously paid | $ 10,000 00 | |
| One-third interest in Palo Pinto Jack county lands | 20,000 00 | |
| One-third interest in Morrison-Smith Lumber Co. | 8,000 00 | |
| One-third interest Ft. Worth lots | 4,000 00 | |
| 66 acres land at Garner, Tex. | 3,500 00 | |
| 50 shares Cicero Smith Lumber Co. | 10,500 00 | |
| 75 shares First National Bank, Mineral Wells | 11,250 00 | |
| 20 shares Ft. Worth State Bank | 2,300 00 | |
| To be paid from bills receivable | 22,957 69 | |
| Total to Mrs. Davis | | 92,507 69 |

⚎For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Section 5, to J. W. Smith:

| | |
|---|---|
| Amount previously paid........ $ 35,000 00 | |
| One-half interest in all East Texas lands .................... 26,441 00 | |
| Interest in Valverde county land .......................... 300 00 | |
| 64 shares in Cicero Smith Lumber Co. .................. 13,440 00 | |
| 68 shares in First National, Mineral Wells ............... 10,200 00 | |
| 4 shares Index Printing Co..... 100 00 | |
| To be paid from bills receivable ........................ 6,826 69 | |
| Total to J. W. Smith................. | 92,507 69 |

"Section 6, to Sidney Smith:

| | |
|---|---|
| Amount previously paid........ $ 35,000 00 | |
| One-half interest in all East Texas lands .................. 26,441 00 | |
| One-half interest in Valverde county land ................... 300 00 | |
| 50 shares Cicero Smith Lumber Co. ...................... 10,500 00 | |
| 75 shares First National Bank, Mineral Wells ............... 11,250 00 | |
| To be paid from bills receivable ........................ 8,816 69 | |
| Total to Sidney Smith................. | 92,507 69 |

To Cleo, Willie, and Gillie Frost:

| | | |
|---|---|---|
| Amount previously paid to their mother ................. $ 10,000 00 | | |
| To be paid from bills receivable ...................... 30,000 00 | | |
| Total to Frost children............... | 40,000 00 | |
| Amount brought forward.............. | 832,569 21 | |
| | $872,569 21 | |

"All mining stock, which cost about $117,000.00, proceeds to be divided equally, share and share alike."

It will be noted that the amount of the first section of the inventory which relates to Genevrie Smith and her three children is $370,030.76. One-fourth (¼) of that amount is $92,507.69, which is the amount shown in the other sections as allotted to each of the other children. The sections of this inventory strongly indicate that in preparing same Cicero Smith contemplated a disposition of his estate by will or deeds, which, taking into consideration the amounts previously advanced, would give to Mrs. Smith and to each of his surviving children the sum of $92,507.69, and to the Frost children, the heirs of a deceased daughter, the sum of $40,000. The proceeds of his mining stock was to be divided equally, share and share alike. On February 23, 1911, Cicero and Genevrie Smith signed and duly acknowledged a bill of sale which reads:

"The State of Texas, County of Palo Pinto.

"Know all men by these presents: That we, Cicero Smith and wife, Genevrie Smith, of the county of Palo Pinto and state of Texas, for and in consideration of the sum of twenty-five dollars ($25.00) to us in hand paid by Genevrie Smith, Susie Smith, Esther Smith and Cicero Smith, Jr., and the love and affection we have and bear for Genevrie Smith and our said daughters and son, have bargained, sold and delivered and by these presents bargain, sell and deliver unto the said Genevrie Smith, Susie Smith, Esther Smith and Cicero Smith, Jr., all of the county of Palo Pinto and state of Texas, their heirs and legal representatives and assigns each an undivided one-fourth interest in and to the following described personal property, to wit: 200 shares of the capital stock of the Cicero Smith Lumber Co., valued at $42,-000.00; 278 shares of the capital stock of the Graham National Bank, Graham, Tex., valued at $33,360.00; 25 shares of the Western National Bank, Ft. Worth, Tex., valued at $3,125.00; 40 shares of the capital stock of the Citizens' National Bank, Stamford, Tex., valued at $5,-000.00; 30 shares of the capital stock of the First National Bank, Santo, Tex., valued at $4,-500.00; 25 shares of the capital stock of the International Fire Insurance Co., valued at $3,750.00; seventy-eight thousand three hundred ninety-five $^{76}/_{100}$ dollars ($78,395.76) in cash to be paid out of the proceeds of notes and accounts and bills receivable belonging to grantors when collected out of same. To be held as the separate estate of grantees herein.

"And it is further hereby specially agreed and covenanted that personalty aforesaid shall remain in the possession of grantor, Cicero Smith, and he is to have and enjoy all the interest, dividends, revenue and proceeds arising therefrom during the natural life of grantor, Cicero Smith, and upon his death the said property herein conveyed shall pass immediately to the possession of the said Genevrie Smith, Susie Smith, Esther Smith in accordance with the terms of this bill of sale with the reservation hereinabove set out, we do ourselves, our heirs, legal representatives and assigns covenant to and with the said Genevrie Smith, Susie Smith, Esther Smith, and Cicero Smith, Jr., their heirs, legal representatives and assigns to warrant and defend the said property before mentioned against all and every person or persons whomsoever."

It will be noted that the property transferred by the foregoing is the same corporate stock and amount to be paid from bills receivable as is shown in the first section of the above inventory.

On the same date Cicero and Genevrie Smith also signed and duly acknowledged bills of sale to each of the five children by former wives. These bills of sale were exactly the same as the one above quoted except as to property transferred.

The bill of sale to Julius Smith transferred everything shown in the second section of the inventory except the lands in Palo Pinto, Jack, and Cottle counties.

The bill of sale to Clemmie Patterson transferred everything shown in the third section of the inventory except the land in Palo Pinto and Jack counties, the two acres on the Ft. Worth-Dallas Interurban and the one-third interest in Ft. Worth lots.

The bill of sale to Helen Davis transferred everything shown in the fourth section of the inventory except the lands in Palo Pinto and Jack counties, the Ft. Worth lots and 66 acres at Garner, Tex.

The bill of sale to J. W. Smith transferred everything shown in the fifth section of the inventory except the East Texas and Valverde county lands.

The bill of sale to Sidney Smith transferred everything shown in the sixth section of the inventory except the East Texas and Valverde county lands.

The bills of sale do not in any wise refer to "amounts previously paid" shown in sections 3, 4, 5, and 6. On February 23, 1911, Cicero Smith signed and duly acknowledged a deed conveying to Genevrie Smith a one-

fourth undivided interest in various tracts of land situate in Runnells county. This deed was recorded March 7, 1911, and reads: "The State of Texas, County of Palo Pinto.

"Know all men by these presents: That I, Cicero Smith, of the county of Palo Pinto and state of Texas, for and in consideration of the sum of twenty-five ($25.00) dollars to me in hand paid by Genevrie Smith, of the county of Palo Pinto and state of Texas, the receipt of which is hereby acknowledged, and the love and affection I have and bear to my said wife, Genevrie Smith, have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said Genevrie Smith, an undivided one-fourth interest in and to all those certain tracts and parcels of land lying and situate in Runnells county, Tex., and particularly described as follows, to wit: [Here follows description of lands]. The above-described property shall be held as the separate estate of the grantee herein.

It is further hereby specially agreed and covenanted that the premises aforesaid with the appurtenances thereto shall remain in the quiet and peaceable possession of the said Cicero Smith, grantor, he to have and enjoy all the rents and proceeds and usufructs arising therefrom during his natural life; then the said property to pass immediately into the possession of the said Genevrie Smith, in accordance with the terms of this deed. To have and to hold the above-described premises with the reservation hereinabove recited, together with all and singular the rights and appurtenances thereto in any wise belonging unto the said Genevrie Smith, her heirs and assigns forever; and I do hereby bind myself, my heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said Genevrie Smith, her heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof."

On February 23, 1911, Cicero Smith signed and duly acknowledged a deed in like form conveying to Genevrie Smith an undivided one-fourth interest in various tracts of land situate in Palo Pinto county. This deed was recorded March 7, 1911.

On February 23, 1911, Cicero and Genevrie Smith signed and duly acknowledged a deed conveying to Susie, Esther and Cicero Smith, Jr., each an undivided one-fourth interest in the Runnells county land. This deed reads: "The State of Texas, County of Palo Pinto.

"Know all men by these presents: That we, Cicero Smith and Genevrie Smith, of the county of Palo Pinto and state of Texas, for and in consideration of the sum of twenty-five ($25.-00) dollars to us in hand paid by Susie Smith, Esther Smith and Cicero Smith, Jr., of the county of Palo Pinto and state of Texas, the receipt of which is hereby acknowledged, and the love and affection we have and bear to the said Susie Smith, Esther Smith and Cicero Smith, Jr., our said two daughters and son, have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said Susie Smith, Esther Smith and Cicero Smith, Jr., each an undivided one-fourth interest in and to all those certain tracts and parcels of land lying and situate in Runnells county, Texas, and particularly described as follows: [Here follows description of land]. The above-described property shall be held as the separate estate of the grantees herein.

"It is further hereby specially agreed and covenanted that the premises aforesaid with the appurtenances thereto shall remain in the quiet and peaceable possession of the said Cicero [Written with pen and ink: "This deed is not to be delivered but the fee is to be passed by will. This deed is made to indicate a proper division"] Smith, grantor, to have and enjoy all the rents and proceeds and usufructs arising therefrom during his natural life; then the said property to pass immediately into the possession of the said Susie Smith, Esther Smith and Cicero Smith, Jr., in absolute fee, in accordance with the terms of this deed. To have and to hold the above-described premises, with the reservation hereinabove recited, together with all and singular the rights and appurtenances thereto in any wise belonging unto the said Susie Smith, Esther Smith and Cicero Smith, Jr., their heirs and assigns forever; and we do hereby bind ourselves, our heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said Susie Smith, Esther Smith and Cicero Smith, Jr., their heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof."

On February 23, 1911, Cicero and Genevrie Smith signed and duly acknowledged a deed conveying to Susie, Esther and Cicero Smith, Jr., each an undivided one-fourth interest in the Palo Pinto county land. This deed reads: "The State of Texas, County of Palo Pinto.

"Know all men by these presents: That we, Cicero Smith and Genevrie Smith, of the county of Palo Pinto and state of Texas, for and in consideration of the sum of $25.00 to us in hand paid by Susie Smith, Esther Smith and Cicero Smith, Jr., of the county of Palo Pinto and state of Texas, the receipt of which is hereby acknowledged and the love and affection we have and bear to the said and our said two daughters and son, have granted, sold and conveyed and by these presents do grant, sell and convey, unto the said Susie Smith, Esther Smith and Cicero Smith, Jr., each an undivided one-fourth interest in and to all those certain tracts and parcels of land lying and situate in Palo Pinto county, Texas, and particularly described as follows: [Here follows description]. The above-described property shall be held as the separate estate of the grantees herein.

"This deed is not to be delivered, but is made to indicate a division of property, the fee to be passed by will.

"It is further hereby specially agreed and covenanted that the premises aforesaid with the appurtenances thereto shall remain in the quiet and peaceable possession of the said Cicero Smith, grantor, he to have and enjoy all the rents and proceeds and usufructs arising therefrom during his natural life; then the said property to pass immediately into the possession of the said Susie Smith, Esther Smith and Cicero Smith, Jr., in absolute fee, in accordance with the terms of this deed. To have and to hold the above-described premises with the reservation hereinabove recited, together with all and singular the rights and appurtenances thereto in any wise belonging unto the said Susie Smith, Esther Smith and Cicero Smith, Jr., their heirs and assigns forever; and we do hereby bind ourselves, our heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said Susie Smith, Esther Smith and Cicero Smith, Jr., their heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof."

There is nothing to show that the two deeds to Susie, Esther, and Cicero Smith, Jr., were filed for record.

The foregoing deeds cover the real estate and corporate stock mentioned in the section

of the inventory relating to Genevrie Smith and her children.

On February 23, 1911, Cicero Smith and Genevrie Smith signed and duly acknowledged various deeds conveying to Julius Smith, Sidney Smith, J. W. Smith, Clemmie Patterson, and Helen Davis, respectively, the lands to them respectively indicated in sections 2, 3, 4, 5, and 6 of the inventory. These deeds were filed in the various counties where the lands were situate on various dates from March 6, 1911, to July 21, 1911. These were all of like tenor and form. As representative of them all, the deed to J. W. and Sidney Smith conveying the Valverde county land is here quoted as follows:

"The State of Texas, County of Palo Pinto.

"Know all men by these presents: That we, Cicero Smith and wife, Genevrie Smith of the county of Palo Pinto and state of Texas, for and in consideration of the sum of $25.00 to us in hand paid by J. W. Smith and Sidney Smith, the receipt of which is hereby acknowledged and the love and affection we have and bear to our said sons, have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said J. W. Smith and Sidney Smith, of the counties of Palo Pinto and Tarrant, respectively, in the state of Texas, all those certain tracts and parcels of land lying and situate in Valverde county, Texas, and being particularly described and set out as follows, to wit: [Here follows description].   This conveyance shall convey all our right, title and interest in the above-described tracts of land.

"And it is further hereby specially agreed and covenanted that the premises aforesaid with the appurtenances thereto shall remain in the quiet and peaceable possession of the said Cicero Smith, grantor, to have and enjoy all the rents and proceeds and usufructs arising therefrom during his natural life; then the said property to pass immediately into the possession of the said J. W. Smith and Sidney Smith in absolute fee, in accordance with the terms of this deed.   To have and to hold the above-described premises with the reservation hereinabove recited, together with all and singular the rights and appurtenances thereto in any wise belonging unto the said J. W. Smith and Sidney Smith, their heirs and assigns, and we do hereby bind ourselves, our heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said J. W. and Sidney Smith, their heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof."

On February 24, 1911, Genevrie Smith and the adult children of Cicero Smith signed and duly acknowledged this instrument:

"The State of Texas, County of Palo Pinto.

"Know all men by these presents: For and in consideration of the mutual benefits to arise to each and all parties hereto we, Genevrie Smith, J. W. Smith, Sidney Smith, Clemmie Patterson, joined by her husband, L. E. Patterson, Helen Davis, joined by her husband, E. A. Davis, Julius Smith, and Susie Smith, Esther Smith and Cicero Smith, Jr., represented by their mother, Genevrie Smith, hereby enter into the following agreement, to wit:

"In consideration of the conveyance to each signer hereof and bills of sale to said personal property, which deed of conveyance and bills of sale were executed by Cicero Smith and wife, Genevrie Smith, on the 23d day of February, A. D. 1911, to each party hereto respectively.

"It is agreed that J. W. Smith shall be and we hereby constitute him our lawful agent to look after and care for our interest respectively in the property set apart to us respectively by the deeds and bills of sale, aforesaid, and he shall so remain our said agent until such time as may suit either of us or all of us to revoke such agency.

"It is further agreed that should the title to any property set out in said deeds of conveyance or bills of sale fail and should any of the notes, accounts and bills receivable set out in said bills of sale fail, then and in that event the failure of the title to any real or personal property, aforesaid, shall be shared pro rata by each and all the signers hereof, including the said Susie Smith, Esther Smith and Cicero Smith, Jr., that is to say that if there are any losses hereinafter entailed such loss shall be borne pro rata by the respective parties hereto.

"It is further agreed and understood that if any losses should come in the future in the management and control of the properties aforesaid each party shall share pro rata in such losses, likewise in any profits arising.

"This instrument shall not be binding after the death of Cicero Smith."

In August, 1912, Cicero Smith and Genevrie Smith separated and the former filed suit for divorce.   While the suit was pending, Cicero and Genevrie Smith by deed and bill of sale dated August 29, 1912, conveyed to J. W. Smith, trustee for Susie, Esther, and Cicero Smith, Jr., certain lands and personal property.   This deed was duly acknowledged, and was filed for record in Palo Pinto county on December 10, 1913, and in Runnells county on June 25, 1914.   The pertinent portions of this deed read:

"The State of Texas, County of Palo Pinto.

"Know all men by these presents: That whereas, Cicero Smith and wife, Genevrie Smith, of the county and state aforesaid, are the owners of the property hereinafter described, as a part of their community estate, and which is free and clear of all defects of title and incumbrances whatsoever, and they desire to set apart and convey the same for the use and benefit of their three minor children, Susie Smith, Esther Smith and Cicero Smith, Jr., so that the rents, interest, dividends and income of every nature therefrom may be used towards their support, maintenance and education during their minority and to their use and benefit after reaching their majority and until they severally arrive at the age of thirty years, when and at which time the same, with all the increase thereof, not used as hereinafter provided shall be delivered to them, and to effectuate this purpose they deemed it advisable and best to convey said property to a trustee, for the use and benefit of their said three minor children, Susie Smith, Esther Smith and Cicero Smith, Jr., to be held, used, disposed of, invested and reinvested as hereinafter directed and empowered.

"Now, therefore, we, Cicero Smith and wife, Genevrie, in consideration of the premises and of the love and affection which we have and bear to our said children, Susie Smith, Esther Smith and Cicero Smith, Jr., and the further consideration of $1.00 to us in hand paid by J. W. Smith, trustee, of Palo Pinto county, Texas, the receipt of which is hereby acknowledged and for the uses and upon the trusts hereinafter mentioned, have granted, conveyed, confirmed and delivered and by these presents do grant, sell, convey, confirm and deliver unto the said J. W. Smith, trustee, all of the following described real and personal property, to wit: [Here follows a complete description of an undivided three-fourths (¾) interest in the Runnells and Palo Pinto county lands heretofore mentioned; also 209 shares of the capital stock of the Graham National Bank; 19 shares of the capital stock of the Western National Bank of Ft. Worth;

30 shares of the capital stock of the Citizens' National Bank of Stamford; 22 shares of the capital stock of the First National Bank of Santo; 19 shares of the capital stock of the International Fire Insurance Company; $62,-243.07, money and notes in the hands of J. W. Smith, trustee, under agreement executed in February, 1911, by Cicero Smith and his wife and all of the children of Cicero Smith and by Genevrie Smith for the minors, Susie, Esther and Cicero, Jr., all of the above-described real and personal property being valued at $247,523.-07; also a 3/10 interest in all mining stocks owned by Cicero Smith, describing same.] To have and to hold the above-described premises and property unto the said J. W. Smith, trustee, and his successors and assigns forever, in trust, nevertheless, for the purposes and uses following and none other: [The other provisions in the deed define the duties of the trustee.]"

J. W. Smith accepted the trust under the foregoing deed and gave the required bond. Pending the suit for divorce, Cicero and Genevrie Smith, on August 29, 1912, entered into a written agreement respecting the custody of their children and division of their property, which reads:

"Number 4151.
"Cicero Smith v. Genevrie Smith.
"Suit Pending in the District Court of Palo Pinto County, Texas.

"In the above entitled and numbered cause, for the purpose of obviating the expense and delay incident to the litigation of the questions involving the care and custody of Susie Smith, Esther Smith and Cicero Smith, Jr., the minor children of plaintiff and defendant, and the property rights of plaintiff and defendant, the plaintiff and defendant have and by these presents do mutually agree that if the divorce is granted, as prayed for in plaintiff's petition, judgment shall be entered disposing of the care and custody of the children, and the property of plaintiff and defendants as follows, to wit:

"[The first and second paragraphs relate to custody of children, etc.]

"Third. Plaintiff and defendant having partitioned their common property, and made provision for their said minor children, by conveyance to J. W. Smith, as trustee, it is agreed that said partition shall stand and that the title and absolute possession of the following property shall be vested by said decree, in defendant, to wit: [Here follows a description of property. A condensed description thereof is as follows:

"Homestead in Ft. Worth, valued at $15,-400.00; an undivided one-fourth interest in the following described property, viz., the Runnells and Palo Pinto county land, described in the two deeds to Mrs. Smith of date February 23, 1911; also 69 shares capital stock Graham National Bank; 6 shares capital stock Western National Bank of Ft. Worth; 10 shares capital stock Citizens' National Bank of Stamford; 8 shares capital stock First National Bank of Santo; 6 shares capital stock International Fire Insurance Company; $4,752.69, out of the money and notes in the hands of J. W. Smith as trustee under the agreement executed in February, 1911, by Cicero Smith and wife and all of their children for the minors Susie, Esther and Cicero, Jr. All of the above real and personal property valued at $82,507.69. Also 1/10 interest in all mining stocks and property owned by Cicero Smith describing same.]

"Fourth. [This relates to the income of the minors Susie, Esther, and Cicero, Jr., from their estate in the hands of J. W. Smith, trustee.]

"Fifth. To avoid disturbing the present status

200 S.W.—35

of said properties and the increments thereof, it is agreed that plaintiff shall pay to defendant on the first day of each month after the date hereof, up to and including the first day of January, 1913, the sum of four hundred ($400.-00) dollars per month for the support of herself and said minors Susie Smith, Esther Smith and Cicero Smith, Jr., and all of the dividends, interest and income for the year 1912 from the properties set apart to defendant herein, and conveyed to J. W. Smith, trustee for said minors, shall be collected by and be the property of the plaintiff under the agreement of February, 1911, reserving in him a life estate in the incomes from said properties.

"Sixth. [This is unimportant]."

On September 4, 1912, decree of divorce was entered in favor of Cicero Smith. In the decree the agreement respecting the custody of the children and division of property was confirmed and made a part thereof.

On September 7, 1912, Cicero Smith made his will. By the terms thereof he left a portion of his estate to J. W. Smith in trust for the Frost heirs. The balance of his estate he devised and bequeathed to Clemmie Patterson, Helen Davis, J. W., Sidney, Julius, Cicero, Jr., Susie, and Esther Smith. Cicero Smith died February 2, 1914, and his will was admitted to probate. In the inventory of his estate there was listed 464 shares of stock of the lumber company.

Genevric Smith filed this suit against J. W. Smith, individually and as trustee and as executor of the estate of Cicero Smith, deceased. She sought recovery of $19,598.94, the same being one-fourth of the amount of cash to be paid out of the proceeds of notes and accounts and bills receivable as shown in the bill of sale first above described; also sought recovery of 50 shares of the capital stock of the Cicero Smith Lumber Company, with accumulated dividends or its value. She alleged the execution and delivery of the bills of sale and deeds of date February 23, 1911, and that same were executed by herself and Cicero Smith for the purpose of effecting a partition of their property between themselves and their various children. Attached to her petition and made a part thereof was the inventory made February 15, 1911, the bill of sale dated February 23, 1911, to herself and Esther, Susie, and Cicero Smith, Jr., first above described, and the instrument of date February 24, 1911, signed by Genevrie Smith and the adult children of Cicero Smith, appointing J. W. Smith their agent.

J. W. Smith answered by a general denial, and specially denied that there was a delivery made of any of the above-described bills of sale; that it was not the intention of Cicero Smith to make delivery or pass title thereby and did not make delivery thereof; that said instruments were simply for the purpose of indicating how his property was to be divided, ultimately passing title by his will. Other features of the answer need not be stated.

The answer was not verified. The case was submitted upon special issues. The charge reads:

"Special Issue No. 1: Was it, or not, agreed and understood between plaintiff, Mrs. Genevrie Smith, and Cicero Smith during the adjustment of their property rights leading up to and at the time of entering the judgment in cause No. 4151 pending in the district court of Palo Pinto county, and styled Cicero Smith v. Genevrie Smith, that 50 of the shares of the capital stock of the Cicero Smith Lumber Company, mentioned in the bill of sale from Cicero Smith and Genevrie Smith to Genevrie Smith, Susie Smith, Esther Smith, and Cicero Smith, Jr., dated February 23, 1911, and apportioned to Mrs. Smith, should thereafter be apportioned to and become the property of said Cicero Smith? Answer: Yes.

"Special Issue No. 2: Did Cicero Smith, or not, at any time subsequent to February 23, 1911, surrender to the plaintiff, Genevrie Smith, his life estate mentioned in the instruments in her favor of date February 23, 1911, in consideration of his being permitted to have and retain as his property the shares of stock in the Cicero Smith Lumber Company which are sued for herein? Answer: Yes.

"Special Issue No. 3: Was the instrument introduced in evidence by the plaintiff dated February 23, 1911, and referred to in this suit as a copy of said instrument attached to plaintiff's petition and marked 'Exhibit B,' delivered by the said Cicero Smith to the defendant, J. W. Smith, prior to August, 1912? Answer: No.

"Special Issue No. 4: Was the instrument introduced in evidence by the plaintiff dated February 24, 1911, a copy of which is attached to plaintiff's petition and marked 'Exhibit C' delivered to J. W. Smith prior to August, 1912? Answer: No.

"Special Issue No. 5: Was it the intention, or not, of the said Cicero Smith and Genevrie Smith at the time of the execution by them of the bill of sale to Genevrie Smith, Susie Smith, Esther Smith, and Cicero Smith, Jr., to 200 shares of the capital stock of the Cicero Smith Lumber Company, on February 23, 1911, that said bill of sale should be delivered to J. W. Smith and become operative as to the 50 shares of stock transferred therein to Mrs. Genevrie Smith? Answer: No.

"Special Issue No. 6: How much cash has been paid the plaintiff, Mrs. Genevrie Smith or for her use and benefit out of the notes, accounts, and bills receivable by J. W. Smith? Answer: $19,598.94.

"In answering the foregoing special issue No. 6, items of property taken by the said Mrs. Genevrie Smith at an agreed value, if any, will be considered by you cash at the value agreed on. Likewise notes or accounts paid for her, if any, by J. W. Smith will be considered cash by you, as to the amounts paid, if any, by the said J. W. Smith.

"The burden of proof is upon the plaintiff to make out her case by a preponderance of the evidence."

Upon the answers judgment was rendered against Mrs. Smith. The evidence amply supports the finding that Mrs. Smith has received the $19,598.94 sued for as her one-fourth of the cash to be paid out of the notes, accounts, and bills receivable, and this phase of the case presents no question for review. The appeal relates to the judgment against her as to the 50 shares of stock in the Cicero Smith Lumber Company.

## Opinion.

1. The plaintiff's petition was founded upon the bill of sale dated February 23, 1911, whereby Cicero Smith, according to the face of the instrument, undertook to convey to Mrs. Smith and her three children 200 shares of the capital stock of the lumber company, reserving to himself for life the revenues thereof and right of possession. It was alleged that this instrument had been executed and delivered by him. Article 1906, R. S. reads:

"An answer setting up any of the following matters, unless the truth of the pleadings appear of record, shall be verified by affidavit. * * *

"A denial of the execution by himself or by his authority of any instrument in writing, upon which any pleading is founded, in whole or in part, and charged to have been executed by him or by his authority, and not alleged to be lost or destroyed. Where such instrument in writing is charged to have been executed by a person then deceased, the affidavit will be sufficient if it state that the affiant has reason to believe and does believe that such instrument was not executed by the decedent or by his authority."

[1-3] Delivery is an essential part of the execution of a written instrument in order to render same operative. The execution of a written contract includes delivery. Koppelmann v. Koppelmann, 94 Tex. 40, 57 S. W. 571; Wheeler, etc., v. Briggs (Sup.) 18 S. W. 555; 9 Cyc. 302; 1 Bouvier's Law Dict. (Rawl's Third Revision) 1111, 1112. Such a contract is not executed until it has been signed and delivered. If defendant desired to place in issue either the signing or delivery of the bill of sale pleaded by Mrs. Smith, it was necessary that he should have denied the same under oath as required by the statute. In the absence of a sworn denial, the nondelivery of the instrument was not an issue in the case, and should not have been submitted to the jury. Davis v. Crawford, 53 S. W. 384; Drew v. Harrison, 12 Tex. 279; Williams v. Bailes, 9 Tex. 61; Ashcroft v. Stephens, 16 Tex. Civ. App. 341, 40 S. W. 1036; Nasworthy v. Draper, 28 S. W. 564; Bank v. Stewart, 39 Tex. Civ. App. 620, 88 S. W. 295; Pullman Co. v. Booth, 28 S. W. 719; Taber v. Eyler, 162 S. W. 490; Buchanan v. Edwards, 51 S. W. 33; Railway Co. v. Pool & Smith, 52 Tex. Civ. App. 307, 114 S. W. 685; Railway Co. v. Tisdale, 74 Tex. 8, 11 S. W. 900, 4 L. R. A. 545; Railway Co. v. Edloff, 89 Tex. 454, 34 S. W. 414, 35 S. W. 144.

[4, 5] 2. Among the affirmative defenses pleaded and relied upon by defendant was that in the negotiations and settlement of the property rights of Cicero and Genevrie Smith in the divorce proceedings, Mrs. Smith, for a consideration, relinquished and retransferred to Cicero Smith the 50 shares of stock in controversy. This, if true, was an affirmative defense to any right to the stock which she might have acquired under the bill of sale. The burden of proof rested upon

the defendant to establish this defense. Boswell v. Pannell, 107 Tex. 433, 180 S. W. 593. At the end of his charge the court instructed the jury that:

"The burden of proof is upon the plaintiff to make out her case by a preponderance of the evidence."

The instruction ,given was a correct statement of the law, but the manner and connection in which the same was given was calculated to lead the jury to believe that the burden was upon Mrs. Smith as to all the issues presented. Upon issues 1 and 2 the burden of proof rested upon the defendant. The charge was erroneous in the particular indicated, and the court should have given special charges Nos. 2 and 3 requested by plaintiff, placing upon the defendant the burden of proof as to those issues. The refusal of these charges is made the basis of the sixth and seventh assignments.

3. Various assignments complain of the insufficiency of the evidence to support the findings upon issues 1, 2, 3, 4, and 5. The case must be reversed and remanded for the errors indicated above. In view of a retrial, we refrain from any comment upon the probative force of the evidence, further than to say that those issues are raised by the evidence, and it will support a finding either way.

4. Without undertaking to discuss in detail the other assignments, we will briefly indicate the view which we entertain of the law governing the questions presented.

[6-9] The bills of sale of February 23, 1911, have all the characteristics of conveyances and none of a will; and, gathering the intention of the makers thereof from the language of the instruments, they were conveyances and in no wise testamentary in character. Emerson v. Pate, 165 S. W. 469; McLain v. Garrison, 39 Tex. Civ. App. 431, 88 S. W. 484, on rehearing, 89 S. W. 284; Bombarger v. Morrow, 61 Tex. 417; Martin v. Faries, 22 Tex. Civ. App. 539, 55 S. W. 501. It is admitted that they were signed; there is evidence that they were delivered to J. W. Smith, to whom it was agreed they should be delivered for all the parties. If such delivery was made by Smith and wife with the intention that they should become operative, then the instruments conveyed to the various grantees the property therein described, and vested title in such grantees subject to the right of Cicero Smith to retain possession of the property during his lifetime and enjoy the revenues thereof so long as he lived. But if delivery to J. W. Smith was not made by the grantors with the intention that the instruments should become operative, then a delivery in its legal sense was not made, and the instruments have not become operative, and have vested no title in the grantees. The intention of the grantors in this particular is the controlling question in determining whether delivery was made. Parol evi-

dence is admissible to show such intention, and its admission does not violate the rule which excludes parol evidence offered to alter, vary, or contradict the terms of a written instrument. Wheeler v. Briggs (Sup.) 18 S. W. 555; Koppelmann v. Koppelmann, 94 Tex. 40, 57 S. W. 571; McCartney v. McCartney, 93 Tex. 359, 55 S. W. 310; Steffian v. Bank, 69 Tex. 513, 6 S. W. 823; Justice v. Peters, 168 Ky. 583, 182 S. W. 611.

[10] 5. Testimony of various witnesses was offered to show that in the negotiations between Mr. and Mrs. Smith leading up to the agreement of August 29, 1912, relative to the settlement of their property rights and the decree confirming the agreement made between them, Mrs. Smith agreed to relinquish to Mr. Smith the 50 shares of the capital stock of the lumber company, which she claimed under the bill of sale of February 23, 1911, in consideration of the payment by Mr. Smith of Mrs. Smith's attorney's fee in the divorce case and the setting aside to her of other property in lieu of the lumber company stock. It is objected to this evidence that it was inadmissible because all of the negotiations between the parties were merged in and concluded by the written agreement, and to give effect to the same would vary and contradict the same. The written agreement is entirely silent as to this lumber company stock. It does not undertake to set it aside to either of the parties, or to in any wise fix or determine ownership thereof. The contract is entirely silent as to what property was set aside to and vested in Cicero Smith. It is thus plain that the entire contract was not reduced to writing; that the agreement as to what property was to be set aside to Cicero Smith lies in parol. The testimony offered does not alter, vary, or contradict that portion of the agreement which was reduced to writing. It was admissible under well-established rules of evidence. Davis v. Sisk, 49 Tex. Civ. App. 193, 108 S. W. 472; Thomas v. Hammond, 47 Tex. 42; Whisenant v. Shores-Mueller Co., 194 S. W. 1175, and cases there cited.

[11] Another objection is urged in the brief against the admissibility of this evidence, but it was not made in the court below, and cannot be considered for the first time upon appeal. Upon appeal the only objections to evidence which can be entertained are those which were made in the court below. See cases cited 7 Michie, p. 33 et seq.

6. The finding of the jury upon the sixth issue establishes that Mrs. Smith has received her share of the notes, accounts, and bills receivable. The evidence abundantly supports this finding. None of the errors assigned affect this part of the matter in controversy, and the issue in respect thereto is severable from the issues upon the suit for the lumber company stock.

The judgment of the court below will there-

fore be affirmed in so far as it relates to her suit for the sum of $19,598.94, the same being her share of the notes, accounts, and bills receivable, and is reversed and remanded for retrial only upon the issue of her right to recover the stock sued for in the Cicero Smith Lumber Company and accumulated dividends or its value.

[12] In view of the necessity for further proceedings in this cause, we desire to direct attention to the general rule that in suits by or against a trustee for the recovery of the trust property the cestuis que trust are necessary parties. Ebell v. Bursinger, 70 Tex. 120, 8 S. W. 77; Schuster v. Crawford, 199 S. W. 327, recently decided by this court and not yet reported. In addition to being sued individually and as executor, J. W. Smith is also sued as trustee. There are some exceptions to the general rule indicated above, and unless the nature of his trust is such as to bring the case within some exception, then the beneficiaries of the trust must be made parties. We express no opinion upon that question, but merely call attention to the general rule, so that such action may be taken with respect to parties as the litigants or the trial court may deem proper. If the beneficiaries are necessary parties, the trial court can and should require their joinder before proceeding further and rendering a judgment which might adversely affect their interests.

·Affirmed in part; reversed and remanded in part.

WALTHALL, J., did not sit, being absent on committee of judges assisting the Supreme Court.

### On Rehearing.

Both parties have filed motions for rehearing. In so far as appellee's motion is concerned, we see no occasion to modify or recede from the views heretofore expressed. It is therefore overruled.

[13] In the original opinion, it was held that none of the errors assigned affected the finding of the jury upon the sixth issue that Mrs. Smith had received her share of the notes, accounts, and bills receivable. This was error. The burden rested upon J. W. Smith to prove payment to Mrs. Smith of her share of the notes, etc., and the error in the court's charge upon the burden of proof affects this phase of the case. This error as to this issue would be immaterial if the evidence showed conclusively that she had been paid her share. Considering the record as a whole, it cannot be said that it so shows, for which reason we erred in affirming as to this issue in the case.

Appellant's motion is therefore granted. The order affirming in part and remanding in part is set aside, and the cause is here now reversed and remanded generally for retrial.